805 So.2d 313 (2001)
HERZOG CONTRACTING CORPORATION, Plaintiff-Appellant,
v.
Robert V. OLIVER, et al., Defendants-Appellees.
No. 35,219-CA.
Court of Appeal of Louisiana, Second Circuit.
December 19, 2001.
*314 John W. Pesnell, Counsel for Defendant-Appellant, Geotechnical Testing.
Downer, Kyle & Wilhite by Philip E. Downer, III, Kevin W. Hammond, Shreveport, Counsel for Plaintiff-Appellant, Herzog Contracting Corp.
Snellings, Breard Sartor, Inabnett & Trascher, L.L.P. by Wendy E.W. Giovingo, Monroe, Counsel for Third Party Defendants-Appellees.
Sessions & Fishman by Glen E. Mercer, New Orleans, Counsel for Defendants-Appellees, Maryland Casualty Co., Maryland Ins. Co. & National Standard Ins.
Roos & Frazier by John McGinty Frazier, Shreveport, Kean, Miller, Hawthorne by Leonard L. Kilgore, III, Melissa M. Cresson, Baton Rouge, Counsel for Defendant-Appellee, Riverwood International Corp.
Barham & Warner by Richard G. Barham, Shreveport, Counsel for Defendant-Appellee, West American.
Before BROWN, GASKINS and CARAWAY, JJ.
*315 BROWN, J.
Plaintiff, Herzog Contracting Corporation ("Herzog"), sued Geotechnical Testing Laboratory, Inc. ("GTL"), alleging a breach of contract arising out of GTL's failure to discover hazardous waste materials on property Herzog purchased in October of 1988. Herzog also named as defendants GTL's insurers, the Maryland Insurance Company, the Maryland Casualty Company, and the National Standard Insurance Company ("Maryland Defendants"). GTL filed a third-party demand against these insurers to recover the costs to defend the suit and any amounts in damages it might be required to pay Herzog. After denying coverage and any obligation to defend the suit, the Maryland Defendants filed a motion for summary judgment seeking dismissal of all of GTL's claims, as well as the claims of Herzog. The trial court granted the motion. Both Herzog and GTL have appealed. We affirm.

Facts and Procedural Background
Herzog filed suit against several parties, including GTL, on February 13, 1998, alleging that certain real property ("the site") located in Shreveport, Louisiana, which it purchased on October 11, 1988, from the Oliver Group[1] was contaminated with hazardous waste materials. Herzog asserted that the Oliver Group warranted that the site would be delivered free of any hazardous waste material and that any required clean-up was to be at the sole expense of the seller.
In 1991, the Louisiana Department of Environmental Quality ("DEQ") discovered hazardous substances or waste materials, including Benzo (a) Anthracene, Benzo (a) Pyrene, Chrysene, and Chromium, at the site during an investigation prompted by a citizen's complaint. The source of the contamination allegedly came from creosote wood treatment operations conducted on the site prior to 1983.
Herzog alleges that, prior to its purchase of the property, it contracted with GTL to perform an environmental evaluation to verify that the site was free from environmental pollutants. According to Herzog, GTL's failure to discover the contamination was a breach of GTL's contractual obligations. Herzog sought damages for GTL's alleged breach, including reimbursement for all sums paid by Herzog for the property and all sums paid by Herzog for remediation of the site, as well as costs and attorney fees.
GTL denied that Herzog had retained it to perform or conduct an environmental survey, investigation, assessment or evaluation of the site. Instead, according to GTL, the scope of its work for Herzog was limited to taking soil borings in locations selected by Herzog and in the manner and to the depths specified by Herzog, having the soil samples tested by a laboratory for the presence of contaminants specified by Herzog, and reporting the results of the laboratory tests to Herzog. GTL claimed that the work which it performed was done under the supervision, direction and control of Herzog and denied any liability to Herzog.
In February 1999, GTL filed a First Supplemental and Amended Answer and Third Party Demands. Among the parties GTL named as third party defendants were the Maryland Defendants. GTL alleged *316 that one or more of the Maryland Defendants issued a commercial general liability policy or policies to GTL insuring it against liability for the damages and losses arising out of its business operations. According to GTL, the insurers had denied coverage, as well as a duty to defend. GTL alleged that if it were held liable to Herzog, then it was entitled to judgment against its insurers for all such damages, as well as the costs and expenses, including attorney fees, incurred by GTL in defending against Herzog's claims.
The Maryland Defendants filed a joint answer denying the allegations contained in Herzog's petition and GTL's third party demand and asserted separate affirmative defenses. They denied that Maryland Casualty and Maryland Insurance had issued any policy of insurance to GTL, but they admitted that National Standard had issued a commercial general liability policy to GTL which was effective during the period beginning "3/5/88 through 3/5/89." National Standard nevertheless denied coverage and a duty to defend GTL.
On June 28, 2000, the Maryland Defendants filed a Motion for Summary Judgment seeking the dismissal of all claims filed against them by Herzog and GTL. They claimed that there was no coverage under any policy of insurance, including the one issued by National Standard, because the claims asserted by Herzog were not for "property damage" caused by an "occurrence," and further, were barred by a "professional services exclusion."
No affidavits were filed in support of the motion for summary judgment. However, a memorandum was attached which included an uncertified copy of the insurance policy issued by National Standard to GTL. The hearing date was set for July 24, 2000. On August 28, 2000, GTL filed a memorandum in opposition and a motion to strike the uncertified policy submitted by the Maryland Defendants. Herzog filed its opposition to the Maryland Defendants' motion for summary judgment on August 29, 2000. Herzog adopted GTL's memorandum.
On September 6, 2000, the Maryland Defendants filed a "Reply Memorandum in Support of Motion for Summary Judgment" and attached the affidavit of Vaneta Smiley as Exhibit "A." Ms. Smiley's affidavit states, in pertinent part, that: she is the Account Specialist assigned to the claim by Herzog against GTL; she initiated a policy search for any policy that the company may have issued during the period of coverage alleged by GTL; the search revealed that National Standard Insurance Company, one of the constituent companies of the Maryland Defendants, had issued policy number EPA81374191, effective 03/05/88 to 03/05/89; and, the policy attached to the motion for summary judgment was a true and correct copy of that policy.
The trial court sustained GTL's motion to strike the uncertified copy of the insurance policy on September 27, 2000, "to the limited extent that only a certified copy of any insurance policy is to be considered in determining the merits of the Motion for Summary Judgment." The court did not consider at that time the affidavit of Ms. Smiley filed September 6th.
On September 29, 2000, GTL filed a "Motion to Strike (Ms. Smiley's) Affidavit" contending that it was untimely and insufficient as a matter of law because it was not based upon personal knowledge and contained hearsay statements, opinions and conclusions which were not admissible in evidence. GTL also filed a response to the Maryland Defendants'"Reply Memorandum in Support of Motion for Summary Judgment." The Maryland Defendants filed an "Opposition to Geotechnical's Motion *317 to Strike (Ms. Smiley's) Affidavit" on January 5, 2001.
On January 16, 2001, the trial court denied GTL's motion to strike. At the same time, the trial court granted the Maryland Defendants' motion for summary judgment, and dismissed the claims of GTL against the Maryland Defendants with prejudice. The court declined to provide reasons for its ruling in a letter to counsel dated March 28, 2001. On March 12, 2001, the trial court granted the Maryland Defendants' motion and designated its judgment dated January 16, 2001, "as a final appealable judgment."[2]
Both GTL and Herzog appealed the judgment denying the motion to strike and the judgment granting summary judgment.

Discussion
Although many issues are raised by this appeal, appellants allege only two assignments of error regarding the trial court's grant of the Maryland Defendants' motion for summary judgment. First, appellants contend that the trial court erred in denying their motion to strike the affidavit of Vaneta Smiley. Second, appellants urge that the trial court erred in finding that there were no genuine issues of disputed material fact and that summary judgment was appropriate. We find the question concerning the affidavit to be specious and lacking any real merit. GTL has never suggested that the National Standard policy is not authentic or that any other policies exist.[3] We will therefore address appellants' argument regarding the propriety of the trial court's grant of summary judgment.

The Merits of the Trial Court's Grant of the Motion for Summary Judgment
As an appellate court, we review summary judgment de novo under the same criteria that govern the trial court's considerations regarding the appropriateness of summary judgment. Schroeder v. Board of Supervisors, 591 So.2d 342 (La. 1991).
A motion for summary judgment is properly granted if the pleadings, depositions, *318 answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. Further, through a 1997 amendment to La.C.C.P. art. 996, the jurisprudential presumption against granting summary judgment has been eliminated. Instead, the enacted changes have leveled the playing field for the litigants. Documentation submitted by the parties will now be scrutinized equally. Indeed, summary judgment is now favored to secure the just, speedy, and inexpensive determinations of all except certain disallowed actions. La.C.C.P. art. 966 A(2). Koeppen v. Raz, 29,880 (La.App.2d Cir.10/29/97), 702 So.2d 337; Gardner v. LSU-MC, 29,946 (La.App.2d Cir.10/29/97), 702 So.2d 53.
The trial court gave no specific written reasons for granting the motion for summary judgment. However the record is clear that the grounds upon which coverage was denied by the Maryland Defendants are that the losses for which GTL might be liable were not "property damage" caused by an "occurrence" as defined by the policy. The Maryland Defendants also contend that the policy excludes coverage for "professional services."

An "Occurrence" Causing "Property Damage"
The policy states that National Standard will pay sums the insured is legally obligated to pay for "property damage" which occurs during the policy period and is caused by an "occurrence:"
We will pay those sums that the insured becomes legally obligated to pay because of "bodily injury" or "property damage" to which this insurance applies.... This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" and "property damage" must be caused by an "occurrence." (Emphasis added).
The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" is defined as:
a. Physical injury to tangible property, including all resulting loss of use of that property; or
b. Loss of use of tangible property that is not physically injured.
GTL's failure to detect environmental pollutants on the property site appears to be an "occurrence" as defined by the policy. In Gaylord Chemical Corporation v. ProPump, Inc., 98-2367 (La.App. 1st Cir.02/18/00), 753 So.2d 349, the defendant gave incorrect information regarding the capabilities of a product it sold to the plaintiff. When the plaintiff sued for breach of contract, the defendant filed a third-party claim against its insurer for coverage under a CGL policy in effect. The insurer claimed there was no coverage because the incident did not constitute an "occurrence." Construing policy language defining "occurrence" identical with that of the instant policy, the court held that "the occurrence of an unforeseen and unexpected loss, whether the result of a defective product or an insured's negligent communication of misleading, incomplete, or incorrect information during the policy period," constitutes an occurrence. Id. at 354. See McKenzie and Johnson, 15 LOUISIANA CIVIL LAW TREATISE; Insurance Law and Practice § 183, p. 368 (West 1996). (When "occurrence" is defined as an "accident," whether there has been an occurrence depends on whether there has been an accident, not upon the legal cause or consequence of that accident.). See also, Nelson v. Want Ads of Shreveport, Inc., 31,168 *319 (La.App.2d Cir.10/30/98), 720 So.2d 1280. (Accident is defined from the viewpoint of the victim; losses that were unforeseen and unexpected by the victim are the result of an accident.).
In this instance, the policy states that the property damage to which the insurance applies must be caused by an occurrence. Although there was an occurrence, that is, GTL's failure to detect the pollutants, the Maryland Defendants claim that the occurrence did not cause the property damage, that is, the physical injury to the property or physical injury that resulted in a loss of use of the property. They claim that the pollution was already there, that GTL did not pollute the property, and, that GTL simply breached its contract to provide an accurate environmental evaluation. We need not, however, reach this issue.

Professional Services Exclusion
Regardless of whether or not the failure to detect hazardous waste materials by GTL constituted "property damage," the Maryland Defendants argue that the professional services exclusion presents an insurmountable barrier to GTL's claim for coverage. The professional services exclusion in the policy provides:
Description of Professional Services:
(If no entry appears above, information required to complete this endorsement will be shown in the Declarations applicable to the endorsement.)
With respect to any professional services shown in the Schedule, this insurance policy does not apply to "bodily injury," "property damage," or "advertising injury," due to the rendering or failure to render any professional service.
Because there was no entry on the endorsement itself, the professional service to which this exclusion applies is in the Declarations. In this instance, the applicable listing corresponding to the endorsement number of the exclusion is "analytical chemist."
GTL contends that the exclusion does not apply because it did not perform the actual chemical analysis of the soil. Rather, GTL took soil samples at the site, then forwarded the samples to a laboratory in Ruston, Louisiana, for analysis.
GTL sent Herzog an environmental survey report. The report prepared by GTL states that the purposes of the study were to: (1) explore the subsurface conditions present at the site; and (2) determine any possible contamination from a wood preserving plant previously located on this site. The report describes the "Field Operations" and "Laboratory Testing." GTL states that it gathered five soil borings, which "[u]pon return to our laboratory, selected samples were subjected to standard laboratory tests." Samples from two locations taken were sent to Enviro-Med laboratories for EP-Toxicity analysis to determine possible contamination from heavy metals and other toxins. The report stated that the soil consisted of alluvial deposits and was mostly clay with traces of decayed vegetation and calcareous nodules. It concluded that, due to the clay nature of the soil, if there had been any past chemical spills, they would have been contained on the surface and clean-up would be fairly easy. GTL also analyzed the results of the EP-Toxicity Tests performed by Enviro-Med Laboratories and expressed its opinion that the site was free of contamination and no extensive clean-up operations were anticipated.[4]
It is clear that Herzog hired GTL to perform the environmental survey of the *320 property, which included an analysis of the soil conditions to determine the presence of toxins related to the prior creosote plant operations. The fact that GTL may have subcontracted part of the actual laboratory testing to another firm did not diminish its role or eliminate its obligation to provide the analysis of the soil, including the chemical composition, the results of which it analyzed and reported to Herzog.
We conclude, therefore, that GTL was providing a professional service for Herzog that included chemical analysis of the soil, regardless of whether it chose to send some of the samples to an outside laboratory for testing. A general liability policy was never intended to guarantee the quality of GTL's professional services or to serve as a performance bond. Swarts v. Woodlawn, Inc., 610 So.2d 888 (La.App. 1st Cir.1992).

Duty to Defend
The summary judgment dismisses all claims of GTL and Herzog against the Maryland Defendants, thereby including GTL's claim that the insurer had a duty to provide GTL with a defense against the claims of Herzog. The insuring agreement in the Commercial General Liability ("CGL") policy issued by National Standard to GTL states that the insurer has a "right and duty to defend any `suit' seeking [] damages" for bodily injury or property damage to which the insurance applies.
It is well-settled law that the insurer's obligation to defend suits against its insured is generally broader than its liability for damage claims. Steptoe v. Masco Const. Co., 93-2064 (La.08/18/94), 643 So.2d 1213; Yarbrough v. Federal Land Bank of Jackson, 31,815 (La.App.2d Cir.03/31/99), 731 So.2d 482; Gleason v. State Farm Mut. Auto. Ins. Co., 27,297 (La.App.2d Cir.08/23/95), 660 So.2d 137, writ denied, 95-2358 (La.12/15/95), 664 So.2d 454. The duty to defend is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excluded coverage. Id.
We conclude that the trial court correctly determined that coverage was unambiguously excluded under the terms of the policy and the defendants had no duty to defend GTL. Accordingly, the trial court's grant of defendants' motion for summary judgment is affirmed.

Conclusion
For the reasons set forth above, the judgment of the trial court is affirmed. Costs are assessed to appellants, Herzog and GTL.
NOTES
[1] For convenience, defendants Robert V. Oliver, Jane Rhymes Oliver, Barbara Ann Cannon Mitchell, Faye Madeline Cannon Mounger, Jean Marie Cannon, Henry H. Davis, Jr., Jean Brown Davis, Jack P. Mabray and Bettie Mabray, C. Henry Wells and Carole Perkins Wells, C.M.C. Partnership, Cotham Haddad and Dorothey Davis Haddad will be referred to collectively as the "Oliver Group."
[2] We note that the trial court did not render any judgment on the Maryland Defendants' motion for summary judgment on the claims asserted against them by Herzog. [This matter was raised on appeal at oral argument; Herzog acknowledged that the omission was an oversight and that it would be bound by the judgment.]
[3] GTL's insistence that the trial court could not consider the affidavit of Vaneta Smiley because it did not comply with the service requirements of La.C.C.P. art. 966, namely that they were not served with a copy of the affidavit by the sheriff at least ten days prior to the hearing on the motion for summary judgment, is frivolous. The summary judgment motion was originally set for July 24, 2000, to be submitted on briefs without oral argument. However, the court apparently left the record open until January 8, 2001. GTL filed its first motion to strike the uncertified copy of the policy on August 25, 2000, one month after the purported hearing date. That motion was set for hearing on September 25, 2000, again to be submitted on briefs without oral argument. The reply memorandum with Ms. Smiley's affidavit attached was filed on September 6, 2000. The trial court granted the first motion to strike on September 27, 2000, to the limited extent that only a certified copy of the insurance policy could be considered for purposes of the motion for summary judgment. GTL then, on September 29, 2000, filed a second motion to strike the affidavit on grounds that it was not served by the sheriff ten days prior to the hearing that had originally been set for July 24, 2000. The hearing on the second motion to strike was continued at least two times to be reset by agreement, when finally, the motion for summary judgment and motion to strike was ordered submitted on January 8, 2001.

Similarly, GTL's complaint that Ms. Smiley's affidavit is hearsay is without merit. Ms. Smiley was clearly competent to attest to the subject matter.
[4] Attached to the report are the EP-Toxicity tests, which apparently Enviro-Med Laboratories provided to GTL. Interestingly, except for a test for the presence of Chromium, the results do not indicate that any of the tests performed by Enviro-Med were for the presence of those toxic substances that were discovered at the site from the previous creosote plant operations to be in violation of EPA regulations.