918 So.2d 516 (2005)
HERZOG CONTRACTING CORPORATION, Plaintiff-Appellee
v.
Robert OLIVER, et al., Defendant-Appellee.
No. 40,342-CA.
Court of Appeal of Louisiana, Second Circuit.
December 16, 2005.
*517 John Whitney Pesnell, Shreveport, for Third Party Plaintiff-Appellant, Geotechnical Testing Laboratory, Inc.
Barham & Warner, L.L.C., by Henry N. Bellamy, Shreveport, for Third Party Defendant-Appellee, West American Insurance Company.
Before STEWART, DREW and LOLLEY, JJ.
DREW, J.
Geotechnical Testing Laboratory, Inc., defendant and third-party plaintiff, appeals judgments denying its motion to strike and granting third-party defendant West American Insurance Company's motion for summary judgment. We affirm.

FACTS
In October of 1988, Herzog Contracting Corporation purchased property (also referred to as "site") in Shreveport, Louisiana, from a partnership and individuals collectively referred to as the "Oliver Group." This property had earlier been the site of creosote wood treatment operations. Prior to the sale, Herzog hired Geotechnical Testing Laboratory ("GTL") to perform an environmental survey of the property. According to a report prepared by GTL, the purposes of the survey were to "(1) explore the subsurface conditions present at the site, and (2) determine any possible contamination from a wood preserving plant previously located on this site." GTL concluded that "the site is free of contamination and no extensive clean up operations are anticipated in order to utilize this site for commercial construction." GTL added that "if any contamination is present and not detected in any of our borings, it should be minor enough and not pose a threat of spreading."
Following a citizen's complaint in 1991 about improper disposal of creosote on the site, the Louisiana Department of Environmental Quality (`DEQ") commenced an investigation of the site. Among the contaminants discovered at the site by DEQ were Benzo(a)Anthracene, Benzo(a)Pyrene, Chrysene, and Chromium.
On February 13, 1998, Herzog filed suit against the Oliver Group and GTL. Herzog alleged that any release, discharge, *518 or disposal of hazardous substances or hazardous wastes occurred on the property prior to its purchase of the property. Herzog further alleged in the suit that GTL had breached its contract with Herzog by failing to discover the contamination. Herzog sought from GTL the damages caused by this breach including, but not limited to, reimbursement to Herzog for all sums paid for the site, all sums paid by Herzog for remediation of the site, plus costs, interest, and attorney fees.
Answering the petition, GTL denied that it was hired by Herzog to perform or conduct an environmental survey, investigation, assessment, or evaluation of the site. Rather, GTL contended that it was only hired to take soil borings at locations, to depths and in the manner specified by Herzog; send certain of these soil borings to a lab for testing for the presence of contaminants specified by Herzog; and report the results of the laboratory tests to Herzog. GTL also argued that the work it performed was done in the manner specified by Herzog and under the control and supervision of Herzog.
GTL subsequently filed a third-party demand on February 16, 1999, against the Oliver Group (which had settled with Herzog in December of 1998), Riverwood International Corporation, Maryland Insurance Company, Maryland Casualty Company, National Standard Insurance Company, and West American Insurance Company. Riverwood had conducted creosote wood treatment operations at the site. It was alleged that Maryland Insurance, Maryland Casualty, and National Standard Insurance (collectively referred to as the "Maryland Defendants") had issued commercial general liability ("CGL") policies to GTL in March of 1988. West American had issued a CGL policy to GTL on September 1, 1995, and this policy was renewed through September 1, 1998.
Herzog amended its petition in September of 1999 to add West American and the Maryland Defendants as defendants to its original petition. Herzog amended the petition to allege that in the alternative, GTL had negligently performed the work and/or services provided to Herzog. Herzog alleged that as a consequence of GTL's negligence, Herzog suffered damages including, but not limited to, payments for remediation of the site, and payments for the acquisition and upkeep of the property. It was also alleged in the amended petition that West American and the Maryland Defendants had policies of liability insurance providing coverage for GTL at the time of GTL's breach of contract.
In their answer to Herzog's amended petitions, the Maryland Defendants admitted that National Standard Insurance had issued a policy to GTL that was effective from March 5, 1988, through March 5, 1989. However, as an affirmative defense, they denied that either Maryland Casualty Company or Maryland Insurance Company had insured GTL.
This is not the first time this lawsuit has been before this court. The first time concerned a protective order excluding a settlement agreement between Herzog and the Oliver Group from discovery by GTL. The trial court denied GTL's motion to compel production of the settlement agreement. This court denied GTL's supervisory writ. However, the supreme court granted the supervisory writ and remanded the matter back to this court for briefing, argument, and opinion. Herzog Contracting Company v. Oliver, XXXX-XXXX (La.1/12/01), 778 So.2d 1149. In an unpublished opinion, this court remanded to the trial court for it to conduct an in camera inspection of the confidential settlement agreement and to craft a discovery order *519 regarding the settlement agreement that balanced the interests of the involved parties. Herzog Contracting Company v. Oliver, 34,472 (La.App. 2d Cir.8/1/01), 797 So.2d 190, writ denied, 2001-2839 (La.1/4/02), 805 So.2d 206. Upon examining the agreement, the trial court concluded that the protective order should not be modified.
Later, this court reviewed the granting of a motion for summary judgment filed by the Maryland Defendants in which they argued that the claims filed by Herzog were not for "property damage" caused by an "occurrence" covered by the policy, and that the claims were excluded by the professional services provision of the policy. This court affirmed the judgment, concluding that the professional services exclusion in the policy applied and, because coverage was unambiguously excluded under the terms of the policy, the Maryland Defendants had no duty to defend GTL. Herzog Contracting Corporation v. Oliver, 35,219 (La.App. 2d Cir.12/19/01), 805 So.2d 313, writ denied, XXXX-XXXX (La.3/28/02), 812 So.2d 632.
On October 25, 2001, West American filed a motion for summary judgment. West American argued that the damages allegedly sustained by Herzog did not occur during the policy period and are specifically excluded from the policy. Attached to the motion was an affidavit from Clifford Taft, Underwriting Manager for West American, who attested that attached to his affidavit was a copy of the policy issued to GTL from September 1, 1995, to September 1, 1996. Also attached to the motion were the West American policies issued to GTL from September 1, 1996, to September 1, 1997, and from September 1, 1997, to September 1, 1998. In addition to opposing the motion for summary judgment, GTL filed a motion to strike the affidavit and insurance policies attached to West American's motion. The motion to strike was denied. In February of 2005, West American's motion for summary judgment was granted on the basis of a pollution exclusion in the policy. GTL appeals.
It is noted that in September of 2002, GTL dismissed its third-party claims against the Oliver Group and Riverwood, and Herzog dismissed its claims against defendants, so apparently GTL and West American are the only parties remaining in this action.

DISCUSSION

Motion to Strike
GTL contends on appeal that the trial court erred in denying GTL's motion to strike the affidavit and insurance policies attached to the motion for summary judgment. GTL argues that:
 The affidavit of Clifford Taft does not set out facts which affirmatively demonstrate that Clifford Taft has personal knowledge of and is competent to testify with respect to the matters set out therein and contains hearsay statements, opinions, conclusions, and assertions of ultimate fact which would not be admissible in evidence.
 The other documents attached to West's memorandum as Exhibits "A," "B," and "C" are not properly identified and authenticated, are not referred to, identified in, or attached to an affidavit or properly sworn to, are hearsay, and would not be admissible in evidence.
Similar issues were before this court when it reviewed the judgment granting the Maryland Defendants' motion for summary judgment. Herzog Contracting Corporation v. Oliver, 35,219 (La.App. 2d Cir.12/19/01), 805 So.2d 313, writ denied. GTL moved to strike the National Standard policy attached to the Maryland *520 Defendants' memorandum in support of its motion for summary judgment on the grounds that the policy was not certified. In response to GTL's motion to strike, the Maryland Defendants attached an affidavit of an Account Specialist to its reply memorandum in support of the motion for summary judgment. The Account Specialist stated that a true and correct copy of the National Standard policy had been attached to the motion and was attached to the affidavit. The trial court granted the motion to strike to the limited extent that only a certified copy of the policy was to be considered. GTL then filed a motion to strike this affidavit. The trial court denied the second motion to strike and GTL appealed. In dismissing GTL's arguments regarding the motion to strike, this court concluded that GTL's objections concerning the affidavit were specious and without merit, and this court noted that GTL was not suggesting that the National Standard Policy was inauthentic or that other policies existed.
Clifford Taft's affidavit stated that he is the Underwriting Manager for West American and that he caused to be prepared a true copy of the West American policy issued to GTL from September 1, 1995, to September 1, 1996. As Underwriting Manager, Taft had personal knowledge of and was competent to testify that the attached policy was a true copy of the policy. The affidavit did not contain any otherwise inadmissible statements. Although the second and third policies were not attached to Taft's affidavit, a stamp of certification from a different underwriting manager was affixed to the front page of these policies. Most importantly, we also note that GTL is not arguing that any of these policies is inauthentic or that other policies exist. The trial court did not err in denying the motion to strike.

Summary Judgment
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, and the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App. 2d Cir.8/21/96), 679 So.2d 477. The interpretation of an insurance contract is usually a legal question which can be properly resolved in the framework of a motion for summary judgment. Barringer v. Rausch, 39,553 (La. App. 2d Cir.4/6/05), 900 So.2d 232.
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Edwards v. Daugherty, 2003-2103 (La.10/1/04), 883 So.2d 932. An insurance contract should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms to achieve an absurd conclusion. Id. If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Id. Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Garcia v. St. Bernard Parish School Board, 576 So.2d 975 (La.1991); Merlin B. Smith, Inc. v. Travelers Property Cas., 35,695 (La.App. 2d Cir.2/27/02), 811 So.2d 1097.
Generally, an insurer's duty to defend lawsuits against its insured is broader than its liability for damage *521 claims. The duty to defend is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Yount v. Maisano, 627 So.2d 148 (La.1993); Matheny v. Ludwig, 32,288 (La.App. 2d Cir.9/22/99), 742 So.2d 1029. Thus, assuming all the allegations of the petition to be true, if there would be both coverage under the policy and liability to the plaintiff, the insurer must defend the lawsuit regardless of its outcome. Yount, supra; Matheny, supra. In addition, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claim within the scope of the insurer's duty to defend the suit brought against its insured. Yount, supra; Matheny, supra.
GTL contends that the West American policies provided coverage because Herzog sustained property damage during the periods when these policies were effective. GTL argues that during these periods, the soil continued to be contaminated and Herzog continued to be unable to use the property for the purposes for which it was acquired or to sell the property.
Regarding coverage for bodily injury and property damage liability, the policy in effect from September 1, 1995, to September 1, 1996, states, in relevant part, with additions in the later two policies placed in brackets:[1]
SECTION ICOVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement
* * *
b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" and "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and
(2) The "bodily injury" or "property damage" occurs during the policy period.
* * *
SECTION VDEFINITIONS
* * *
9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
* * *
12. "Property damage" means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss [of use] shall be deemed to occur at the time of the "occurrence" that caused it.
* * *
This court has previously stated that GTL's failure to detect the pollutants on the property appeared to be an "occurrence" as defined by the National Standard policy. That policy offered an identical definition of "occurrence" as appears in the West American policy: "an accident, including continuous or repeated exposure to substantially the same general harmful *522 conditions." Herzog Contracting Corporation, 805 So.2d at 318.
Herzog has alleged that GTL breached its contract and was negligent in failing to discover the contamination. Thus, the occurrence that would have triggered coverage under the West American policies took place when GTL allegedly failed to properly perform the environmental survey of the property. This survey was done in 1988, well before the effective date of the policy, and, hence, there was no occurrence during the policy periods.
In order for there to be coverage under these policies, the property damage must have occurred during the policy period. The property damage was the contamination (physical injury) to the property, which was caused by previous owners and users of the site. GTL's liability is hinged upon its failure to detect the contamination. Even if the property is not considered physically injured, property damage as defined by the policy includes "[l]oss of use of tangible property that is not physically injured." However, that loss of use is deemed to occur at the time of the occurrence that caused it. That occurrence predated the policy by almost seven years. Accordingly, the property damage did not occur during the policy period, and coverage is unambiguously excluded.

CONCLUSION
At Geotechnical Testing Laboratory, Inc.'s costs, the judgments denying Geotechnical Testing Laboratory, Inc.'s motion to strike and dismissing West American Insurance Company as a defendant from this lawsuit are AFFIRMED.
NOTES
[1] Another difference in the cited sections between the West American policies is that the numbering in the Definitions section is later changed.