883 So.2d 932 (2004)
Virginia Gail EDWARDS, As Natural Tutrix, et al.
v.
Edward M. DAUGHERTY, Jr., Sphere Drake Ins. Co., et al.
Nos. 2003-C-2103, 2003-C-2104.
Supreme Court of Louisiana.
October 1, 2004.
*935 Frohn & Thibodeaux, David R. Frohn, Robin A. Anderson, Lake Charles, Counsel for Applicant in No. 2003-C-2103.
Lund & Davis, Clay Davis, Samuel B. Gabb, Lake Charles, Phelps Dunbar, Marshall M. Redmon, Virginia Y. Trainor, Baton Rouge, Woodley, Williams, Boudreaux, Norman, Brown & Doyle, James B. Doyle, David B. Green, Keith Prudhonne, Lake Charles, Counsel for Respondent in No. 2003-C-2103.
Lund & Davis, Clay Davis, Samuel B. Gabb, Lake Charles, Counsel for Applicant in No. 2003-C-2104.
Frohn & Thibodeaux, David R. Frohn, Robin A. Anderson, Lake Charles, Phelps Dunbar, Marshall M. Redmon, Virginia Y. Trainor, Baton Rouge, Woodley, Williams, Boudreaux, Norman, Brown & Doyle, James B. Doyle, David B. Green, Keith Prudhonne, Lake Charles, Counsel for Respondent in No. 2003-C-2104.
Galloway, Johnson, Tompkins, Burr & Smith, Kevin L. Cole, Diana L. Tonagel, for Amicus Curiae.
JOHNSON, Justice.
This matter has been before this Court on numerous occasions over the course of nearly ten years. In its latest decision, the court of appeal reached the following conclusions: (1) the surplus lines insurer may deduct from the policy limits legal fees incurred on behalf of the insured as well as those incurred on the insurer's behalf; (2) it is impermissible for the surplus lines insurer to deduct the payment of legal interest from the policy limits; and (3) prejudgment interest is recoverable on awards for future damages. We granted this writ of certiorari primarily to determine the correctness of that decision. After a careful review of the record and relevant law, we reverse the lower courts' determination that the insurer may deduct legal fees from the policy limits incurred on its own behalf. In all other aspects, the court of appeal's ruling is affirmed. We remand this matter to the trial court to calculate the remainder of the policy limits, after the deduction of defense costs, including attorneys fees incurred on behalf of the insured only, and the calculation of interest on the entire judgment from the date of judicial demand.

FACTS AND PROCEDURAL HISTORY
This litigation arises from a 1993 automobile accident in which Jaymie Edwards was struck and severely injured while attempting to direct traffic around the scene of an accident. Suit was filed on behalf of Jaymie Edwards by his co-curatrixes, Virginia Edwards, his former spouse, and Eva Edwards, his mother, and on behalf of his three children by Virginia Edwards, their natural tutrix. Named as defendants were Edward M. Daugherty, the intoxicated driver of the vehicle which struck Edwards, Daugherty's insurer, and Sheriff Wayne McElveen of the Calcasieu Parish Sheriff's Department and his insurers, one of which is Sphere Drake Insurance, P.L.C. ("Sphere Drake")[1]
All parties, except Daugherty, Sheriff McElveen, and Sphere Drake, were dismissed prior to trial, either by summary judgment or settlement. When trial commenced, *936 the issues as to all parties other than the Sheriff were tried by a jury, and the issues relating to the Sheriff were tried by the trial judge. At the trial's conclusion, the jury returned a verdict finding Daugherty 67.5% at fault and the Sheriff 32.5% at fault.[2] The trial judge assessed the Sheriff with 55% fault and Daugherty with 45% fault.[3] The trial judge later entered a "judgment on the jury verdict" reflecting the jury's determinations.
Subsequently, plaintiffs filed a motion for judgment notwithstanding the verdict ("JNOV"), in large part because of the jury's failure to make an award for pain and suffering and loss of enjoyment of life. The trial judge granted the JNOV and revised the jury's verdict. The jury's apportionment of fault remained unchanged, but the trial judge altered the quantum awards.[4]
Sphere Drake had issued an "excess law enforcement liability insurance policy" in favor of Participants of Louisiana Sheriffs Risk Management Program ("LSRMP"). According to LSRMP's articles of association, "the Sheriffs of the State of Louisiana have been unable to procure adequate public liability[[5]] insurance in the open market at a reasonable rate." Thus, LSA-R.S. 33:1482 authorizes Sheriffs in the State of Louisiana to establish and become members of "an interlocal risk management program,"[6] pool their risks, and establish a group self-insurance fund.[7] Approximately fifty-five Louisiana Sheriffs are members of the LSRMP.
In short, due to high risk associated with the LSRMP, traditional insurance was largely unavailable to it due primarily to the extraordinary cost of insurance. To meet the special needs of entities such as the LSRMP, Louisiana has allowed certain *937 "approved unauthorized insurers,"[8] to sell insurance on a "surplus lines"[9] basis. In this instance, Sphere Drake is a surplus lines carrier.[10]
The Sphere Drake policy covers sums "that the insured becomes legally obligated to pay as damages because of bodily injury... caused by any person whilst acting within the course and scope of their employment." It is a claims made policy, and it provides $1,000,000.00 liability coverage per claim, with the $1,000,000.00 coverage being an aggregate for each sheriff's department and $2,000,000.00 liability coverage is the aggregate for all of the sheriff's departments who are members of the LSRMP. Under the policy, Sphere Drake's liability was excess of an $850,000.00 self-insured retention fund maintained by the LSRMP, which in turn, was excess of a $100,000.00 per claim per sheriff/$300,000.00 aggregate per sheriff's department self-insurance. In short, the policy is an aggregate one, and as claims are made and paid, as defense costs are incurred, the $1,000,000.00 is reduced.
During the JNOV proceedings, plaintiffs expressed concern that the limits of the Sphere Drake policy were being depleted and argued that the judgment rendered against Sphere Drake should be amended to award them Sphere Drake's policy limits of $1,000,000.00. Sphere Drake asserted that its policy is an aggregate policy with a limit that steadily decreases as claims for payments from other Louisiana sheriffs are paid during the policy year. Therefore, any judgment against it must contain the wording "subject to its policy limits."
The trial judge addressed plaintiffs' concerns regarding the depletion of the policy limits, noting that Lloyds of London, as the Sheriff's excess insurer, is obligated to pay "another million dollars" to satisfy the judgment. Counsel for Sphere Drake stipulated on the record that at least $750,000.00 of its policy limits was available to satisfy a portion of the judgment against the Sheriff. The trial judge cautioned that he was "not going to allow the insurance company to go and write off costs to reduce that [$750,000.00]." The trial court entered judgment against Sphere Drake in the amount of $1,756,022.50, "subject to its policy limits."
Sheriff McElveen and Sphere Drake appealed, and the court of appeal affirmed the trial court's judgment, except for the portion of the JNOV affirming the jury's allocation of fault. The court of appeal amended that portion of the judgment to "harmonize the jury's fault assessment with the trial judge's." Thus, the Sheriff was cast with 55% fault and Daugherty with 45% fault. Edwards v. Daugherty, 97-1542 (La.App. 3 Cir. 3/10/99), 729 So.2d 1112, writs denied, 99-1393, 99-1434 (La.9/17/99), 747 So.2d 1105. Regarding *938 plaintiffs' concern that the limits of the Sphere Drake policy were being depleted, the court of appeal stated:
If Sphere Drake fails to pay its policy obligation, the trial judge retains the authority to enforce the judgment cast against it. We deem it premature to entertain plaintiffs' fear that Sphere Drake will not fully honor its contractual undertaking or that it will attempt to exhaust the available policy limit to avoid satisfying their claims. Plaintiffs are not without a remedy.
Edwards, 729 So.2d at 1140.
Sphere Drake then filed a petition to deposit the policy proceeds into the registry of the court, alleging that its aggregate policy limits were being depleted while plaintiffs' claims were being litigated. Thereafter, Sphere Drake deposited $334,000.00 into the court's registry. According to Sphere Drake, under the terms of its policy, that amount was all that remained of the $1,000,000.00 policy limit. It asserted that the reduced figure resulted from the terms of the policy, which included payments for defense costs and payments made to other claimants from the policy.
Plaintiffs withdrew the funds from the court's registry and began efforts to collect additional funds from Sphere Drake. Plaintiffs filed a judgment debtor rule against Sphere Drake and subsequently seized the only asset identified by Sphere Drake, a bank account with a balance of approximately $3,200.00.
On May 9, 2000, plaintiffs obtained a judgment declaring that "Sphere Drake P.L.C. remains liable to plaintiffs, Virginia Gail Edwards, et al., in the amount of [$1,000,000.00], plus judicial interest from April 12, 1994, which is the date of judicial demand, less any payments Sphere Drake P.L.C. may have previously provided to plaintiffs."[11]
Sphere Drake appealed the May 9, 2000 judgment, and the court of appeal found that the judgment was an improper substantive change of the original judgment. The appellate court concluded that the portion of the Sphere Drake policy, which permitted the reduction of the limit of the liability due to the payment of defense costs, expenses, and interest, violated public policy. The court of appeal concluded that the policy limits were $1,000,000.00. Edwards v. Daugherty, 00-0606 (La.App. 3 Cir. 12/6/00), 776 So.2d 557.
This Court granted Sphere Drake's application for writ of certiorari in part, stating:
The ruling of the court of appeal is vacated to the extent that it does anything other than 1) reverse the judgment of the trial court of May 9, 2000; 2) reinstate the original trial court judgment; and 3) reverse the judgment against Continental Casualty Company. The case is remanded to the trial court for the taking of evidence on whether defendant Sphere Drake Insurance, P.L.C. was an admitted carrier and whether the policy at issue was a surplus lines policy at the time of issuance. If so, the trial judge should determine the amount remaining available, pursuant to the terms and conditions of the *939 policy, for satisfaction of the judgment rendered in the case. The propriety of that determination may thereafter be raised by any party aggrieved.
Edwards v. Daugherty, 01-0540 (La.4/27/01), 791 So.2d 107, 107-108 ("Edwards I").
On remand, the parties stipulated that the Sphere Drake policy was a surplus lines policy at the time of issuance, and Sphere Drake was an "approved unauthorized surplus lines insurance company," pursuant to provisions of the Louisiana Insurance Code. Following a hearing, the trial court concluded that $835,683.15 remained of the Sphere Drake policy at the time of trial, and the reduction from the policy limits for attorney's fees incurred in the defense of both Sphere Drake and the Sheriff was contracted for by the parties. However, the trial court declined to reduce the policy limits by the amount of the appeal bond, finding that the appeal for which the bond was taken advanced only the interests of Sphere Drake, rather than the Sheriff's interest. Additionally, the trial court concluded that the reduction of the policy limit due to the payment of interest is against public policy. Shortly thereafter, the trial court entered an amended judgment, finding Sphere Drake liable in the amount of $792,162.96, subject to a credit for previous payments to plaintiffs, in the amount of $645,213.57, with legal interest from the date of judicial demand until paid.
Sphere Drake appealed. The majority of a five-judge panel of the court of appeal affirmed the trial court's finding that attorney's fees are to be included as a deduction from the policy limits. The appellate court also affirmed the finding that interest does not reduce the amount of the policy limit available. However, the court of appeal vacated the trial court's determination that $835,683.15 remains of the policy limits and remanded the matter "for the trial court to receive evidence as to the policy limits," instructing the trial court as follows:
In particular, the trial court is to consider evidence regarding payments made in other cases that affect the policy limits. As in this case, the sums relating to these other suits are not to include interest paid on those judgments. The trial court is ordered to list all deductions, specifically including the specific dollar figure, and make all calculations a part of the record so that such deductions and calculations might be reviewed.
Edwards v. Daugherty, 02-0354 (La.App. 3 Cir. 6/25/03), 848 So.2d 787, 795.
Judge Saunders dissented, opining that the trial court erred in re-opening evidence regarding Sphere Drake's available policy limits after remand from this Court. He also dissented from the majority's inclusion of certain attorney's fees in establishing the available policy limits. In Judge Saunders' opinion, the policy provision which allows Sphere Drake to reduce the limit for its own attorney's fees is against public policy and contrary to the terms of the insurance contract. Judge Woodard also dissented but did not assign reasons.
Plaintiffs and Sphere Drake filed applications for writ of certiorari, and by order dated November 14, 2003, we granted both writ applications. Edwards v. Daugherty, 03-2103, 03-2104 (La.11/14/03), 864 So.2d 607.

DISCUSSION

This Court's Prior Ruling
First, plaintiffs argue that this Court instructed the trial court to "determine the amount remaining available, pursuant to the terms and conditions of the policy, for satisfaction of the judgment *940 rendered in the case." Edwards I, 791 So.2d at 107. This Court instructed the trial court to take evidence for the limited purposes of determining whether Sphere Drake was an admitted carrier and whether the policy was a surplus lines policy. According to plaintiffs, this Court's instructions did not contemplate the submission of additional evidence regarding Sphere Drake's policy limits.
In this Court's previous order in this matter, we stated, unequivocally, that we were remanding this matter "for the taking of evidence" regarding Sphere Drake's status as a surplus lines carrier and whether the policy at issue was a surplus lines policy.[12] Moreover, we stated that if Sphere Drake was deemed to be a surplus lines carrier and the policy was, in fact a surplus lines policy, the trial court was instructed to determine the limits of the policy in accordance with its terms. There is nothing in this Court's previous order to suggest that we did not anticipate that the trial court would take additional evidence to ascertain the remaining amount of the policy limits. Therefore, plaintiffs' argument regarding the taking of additional evidence to ascertain the remaining amount of the policy is without merit.

Attorneys Fees
Alternatively, plaintiffs argue that Sphere Drake improperly deducted two sets of attorneys fees from the coverage afforded under the policy at issue. Plaintiffs contend that, at best, the Sphere Drake policy allows the deduction of defense costs. However, the insurer has deducted the fees of the law firm that was hired to defend itself, as well as the fees and expenses of the law firm hired to defend Sheriff McElveen.[13]
Sphere Drake contends that all of the expenses paid by it, including attorneys fees, are legitimate expenses, pursuant to the terms of the policy. According to Sphere Drake, the policy specifically authorizes the payment of attorneys fees spent in connection with an occurrence. The insurer maintains that the policy does not limit attorneys fees and other litigation related expenses to expenditures paid on behalf of the insured. Moreover, Sphere Drake contends that the policy clearly allows reduction of the policy limits by the cost of its own attorneys fees because it was named as a defendant in the lawsuit.

Relevant Legal Precepts
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Cadwallader v. Allstate Ins. Co., 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580; Carbon v. Allstate Ins. Co., 97-3085, p. 4 (La.10/20/98), 719 So.2d 437, 439; Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. See LSA-C.C. art. 2045; Cadwallader, 848 So.2d at 580; Carbon, 719 So.2d at 439; Louisiana Ins., 630 So.2d at 763.
Words and phrases used in an insurance policy are to be construed using *941 their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. See LSA-C.C. art. 2047; Cadwallader, 848 So.2d at 580; Peterson v. Schimek, 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1028-29; Carbon, 719 So.2d at 440-441; Reynolds, 634 So.2d at 1183. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms to achieve an absurd conclusion. Cadwallader, 848 So.2d at 580; Carrier v. Reliance Ins. Co., 99-2573, p. 11 (La.4/11/00), 759 So.2d 37, 43; Peterson, 729 So.2d at 1029. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent. Cadwallader, 848 So.2d at 580; Succession of Fannaly v. Lafayette Ins. Co., 01-1355, p. 4 (La.1/15/02), 805 So.2d 1134, 1138; Peterson, 729 So.2d at 1029.
Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. LSA-C.C. art. 2056; Cadwallader, 848 So.2d at 580; Carrier, 759 So.2d at 43; Louisiana Ins., 630 So.2d at 764. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. Cadwallader, 848 So.2d at 580; Carrier, 759 So.2d at 43. The strict construction principle applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. Cadwallader, 848 So.2d at 580 (emphasis in original); Carrier, 759 So.2d at 43-44; Louisiana Ins., 630 So.2d at 770.
If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Cadwallader, 848 So.2d at 580; Fannaly, 805 So.2d at 1137; Louisiana Ins., 630 So.2d at 764. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. Cadwallader, 848 So.2d at 580; Peterson, 729 So.2d at 1029; Louisiana Ins., 630 So.2d at 764. The determination of whether a contract is clear or ambiguous is a question of law. Cadwallader, 848 So.2d at 580; Louisiana Ins., 630 So.2d at 764.

The Sphere Drake Policy
The policy at issue is what is commonly know as a "wasting asset" or "defense within limits" (DWL) policy because the available indemnity limits may be consumed or "wasted" by the costs of defense.[14] Such policies include all defense costs and litigation expenses within the applicable limits of liability. Under such policies, the insureds' costs of defense, including attorneys' fees, expert witness fees, and other litigation expenses, are *942 paid by the insurance companies and deducted from the policy limits as they are incurred, thereby reducing the amount of insurance coverage available to pay settlements or satisfy judgments. See Shaun McParland Baldwin, LEGAL AND ETHICAL CONSIDERATIONS FOR "DEFENSE WITHIN LIMITS" POLICIES, 61 Def. Couns. J. 89 (1994). In short, every dollar spent on defense reduces the amount available to satisfy potential judgments.
DWL policies were first adopted in the 1980s. Since then, there has been an ongoing national debate as to whether DWL policies actually benefit insurance consumers. The cause for concern is the interest conflict that arises in every case between the insured and the insurer when dollars spent on defending claims result in fewer dollars being available for settlement of the claims or satisfaction of judgments. The parties are conflicted when the insurer is focused on a defense on the merits, and the insured wants assurance that the limits of liability will be available. The end result may be claims for bad faith and excess exposure to liability. Gregory S. Munro, DEFENSE WITHIN LIMITS: THE CONFLICTS OF "WASTING" OR "CANNIBALIZING" INSURANCE POLICIES, 62 Mont. L.Rev. 131, 144-45 (2001).
Some states have enacted laws which limit or prohibit the use of DWL policies. For example, a Minnesota statute provides, "No insurer shall issue or renew a policy of liability insurance in this state that reduces the limits of liability stated in the policy by the costs of the legal defense." However, the statute excepts "large commercial risks," defined as an insured with gross annual revenues of $10 million or more." See Minn.Stat. § 60A.08, subd. 13 (1992).[15]
New York allows defense within limits for (1) a policy issued to a "large commercial insured" with net worth of $15 million, gross assets of $50 million and net worth of $3 million, or generating annual gross revenues over $50 million and a net worth of $3 million or (2) primary policies with limits of at least $5 million or with a deductible or self-insured retention of at least $100,000. See N.Y.Comp.Codes R. & Regs. Tit. 11, § 107 (1992).
An Arkansas statute requires a separate limit for defense costs to prevent the depletion of indemnity limits. The statute forbids the approval of any policy in which defense expenditures deplete policy limits, unless a separate limit for defense costs equal to 100% of the annual aggregate limit of liability stated in the policy for judgments or settlements is offered for defense costs or claims expenses to the insured. See Ark.Code Ann. § 23-79-307(5)(A).[16]
*943 Additionally, some state insurance commissioners have expressly retained the right to disapprove policies that include defense costs within limits, as well as policies that do not clearly disclose the effects of the policy. For example, Colo.Rev.Stat. §§ 10-4-419 provides that the Colorado Insurance Commissioner may disapprove claims-made policies which do not provide that defense costs are covered but excluded from the aggregate limit. Mont.Code Ann. §§ 33-1-502 mandates that the Montana Insurance Commissioner disapprove policies which incorporate "inconsistent, ambiguous or misleading clauses," including provisions in casualty insurance forms that permit defense costs within limits. Additionally, an Oregon statute provides that a liability policy that includes defense costs within policy limits "may not be delivered or issued for delivery unless approved by [the] director," and mandates the inclusion of a statement disclosing that costs of defending claims are included in policy limits. See Or.Rev.Stat. §§ 742.063.
Our review of the statutory provisions concerning surplus lines insurance leads us to conclude that Louisiana has no statutory restrictions concerning DWL policies. There is no statutory provision that expressly grants or limits Sphere Drake's right to project all costs onto its insureds. In fact, the Louisiana Insurance Code provides little regulation of surplus lines insurance. At the post-trial hearing in this case, Kathleen Hennigan, the Director of Property and Casualty Division of the Louisiana Department of Insurance, testified the Department of Insurance regulates surplus lines insurance, but not in regards to policy terms and conditions. The Department is mainly concerned with the insurers' financial solvency and claims practices. Indeed, to achieve approved unauthorized status, surplus lines carriers need only demonstrate financial soundness and meet other consumer protection requirements mandated by the Insurance Code and/or the Commissioner of Insurance. More importantly to this case, there are no regulations at all regarding "defense costs" provisions in surplus lines policies.
Section I, Paragraph 1 of the Sphere Drake policy at issue provides in relevant part:
1. Insuring Agreements
a. We the Underwriters will pay on behalf of the Named Insured those sums, in excess of the Underlying Insurance... that the Insured becomes legally obligated to pay as damages because of bodily injury, personal injury or property damage ... which is caused by any person whilst acting within the course and scope of their employment by the Insured.
b. We the Underwriters will have the right, but not the duty, to participate in the defense of claims or suits against the Insured seeking damages because of injury or damage to which this insurance may apply.
This right to defend is limited as set forth in paragraph 3, below.
Section I, Paragraph 3 provides:
3. Defense of Claim or Suit
a. Should the Underwriters defend any claim or suit after the Underlying Insurance has been exhausted by payment of *944 judgments, settlements and Defense Costs and Expenses, Underwriters will be liable, subject to the Limits of Liability set forth herein, for "Defense Costs and Expenses" and may make any investigation of such claim or suit as they deem appropriate.
In the event that the Underwriters provide defense of any claim or suit, whether or not obligated to do so, Underwriters may make any investigation of such claim or suit as they deem appropriate, Underwriters may settle such claim or suit within the "Amount of Insurance" available at the time of settlement.
b. The Underwriters [sic] right to defend shall cease when the "Amount of Insurance" has been exhausted through payment of any combination of judgments, settlements or "Defense Costs and Expenses" as provided under SECTION II"Limits of Liability."
c. Wherever Underwriters assume the sole control of defense in respect of any claim or suit, Underwriters will be liable, subject to the Limit of Liability for "Defense Costs and Expenses."
d. If by mutual agreement or court order the Insured assumes control of such defense prior to the exhaustion of the applicable "Amount of Insurance," Underwriters will reimburse the Insured for reasonable "Defense Costs and Expenses."
* * *
The section contained within the policy entitled, "Section IILimits of Liability," provides in pertinent part:
* * *
4. All "Defense Costs and Expenses" paid by Underwriters shall be added to judgments and settlements paid by Underwriters to determine the exhaustion of Underwriters applicable Limit of Liability.
5. Each payment made by Underwriters for damages because of injury or damage to which this insurance applies and for "Defense Costs and expenses" reduces, by the amount of such payment, the applicable Limit of Liability of this policy. Each such payment reduces, by the amount of such payment, the applicable Annual Aggregate Limit of this policy. The limits thus reduced will be the "Amount of Insurance" available for further payments of claims or expenses.
6. Annual Aggregate Limit[[17]] is the maximum amount Underwriters will pay for all damages because of injury or damage to which this insurance applies including all "Defense Costs and Expenses."
7. Subject to 5. above, the Limits of Liability stated as respects "any one person" and "any one incident" are the maximum Underwriters will pay for the sum of all damages because of injury or damage to which this insurance applies and all "Defense Costs and Expenses" because of all injury or damage arising out of any one claim or series of claims arising out of one Circumstance of Event.
* * *
Section IV(3) of the policy embodies the deduction of defense costs and expenses and provides:
3. "Defense Costs and Expenses" means payments allocated to a specific claim for its investigation, settlement or defense, including:

*945 (a) Attorney fees and all other litigation expenses;
* * *
(d) reasonable expenses incurred by the Insured at Underwriters request to assist Underwriters in the investigation or defense of a claim or suit, including actual loss of earnings up to $100 a day because of time off from work;
* * *
(g) fees and expenses of independent adjusters and investigators hired by Underwriters;
"Defense Costs and Expenses" does not include:
Salaries and expenses of Underwriters employees or the Insured's employees, other than:
(1) that portion of Underwriters employed attorney's fees, salaries and expenses allocated to a specific claim or suit; and
(2) the expenses described in d. above.
In this case, the trial court was clearly concerned about the deduction of two sets of attorneys fees from the policy limits. The colloquy was as follows:
THE COURT:
The contract policy required you to provide a defense to the Sheriff. Of course, you had to represent the insurance company. I've got a little bit of a problem with such a large amount of money going for legal fees and not going to the, notwithstanding what the policy required, not going to the plaintiffs. I've just got a problem with that.
* * *
SPHERE DRAKE COUNSEL:
Judge, that's going to be a legal issue that you're going to have to wrestle with. When they filed that supplemental petition, they made some claims against Sphere Drake for [penalties under the Direct Action Statute]. Sphere Drake was only one of several insurers. The loyalty of Sphere Drake was not only to Sheriff McElveen but for 60 something other Sheriffs.
THE COURT:
Yes, to the Sheriff's Association.
* * *
SPHERE DRAKE COUNSEL:
[T]he Direct Action Statute plays a role here. This is a Direct Action Statute and that policy says that when underwriters are required to hire lawyers under that Direct Action Statute, that comes out of the policy. That's an agreement that they had with the Sheriffs and we're going to hear that from the witnesses.
Nevertheless, despite its expressed concern, the trial court concluded that the policy provided for the deduction of all "defense costs and expenses."
A plain reading of the above referenced provisions of the policy reveals that the LSRMP entered into a contract with Sphere Drake for "All `Defense Costs and Expenses'" to be added to judgments and settlements. "Attorneys fees and all other litigation expenses" were included in the definition of "defense costs and expenses." The policy also states that, while Sphere Drake is not obligated to defend any claim or lawsuit, it has the "right to defend" should it elect to do so, and the policy would cover "defense costs and expenses," should Sphere Drake defend any claim or suit. While Sphere Drake, as the surplus lines insurer, was not primarily obligated to defend the LSRMP, it "provide[d] defense" of the claim by paying the attorneys fees for the Sheriff, as permitted by the *946 policy.[18] Thus, although the policy did not obligate Sphere Drake to defend the LSRMP, pursuant to the express provisions of the policy, the costs of doing so may be deducted from the policy limits. See, Board of Comm'rs of the Port of New Orleans v. M/V Rachael Guidry, 425 F.Supp. 661 (E.D.La.1977) (recognizing that where an insurer has no independent duty to defend, and the policy specifically provides for the deduction of costs, fees, and expenses, the insurer may deduct the costs of defense from its policy limits).
However, in addition to deducting the costs of defending the LSRMP, Sphere Drake seeks to deduct the cost of defending itself. For defense costs of expenses to be credited towards the limits of the policy, it must be authorized by the policy. As indicated above, Section I, Paragraph 1, subpart b of the policy sets forth Sphere Drake's defense obligation as follows:
We the Underwriters will have the right, but not the duty, to participate in the defense of claims or suits against the Insured seeking damages because of injury or damage to which this insurance may apply.
This right to defend is limited as set forth in paragraph 3, below.
(Emphasis added). Thus, the policy clearly contemplates that the defense to be provided is a defense of the insured. The policy makes no mention of a defense separately provided to the insurer to defend direct actions arising out of the occurrence; nor does it mention a defense of claims for penalties brought directly against the insurer and arising out of the insurer's conduct. In fact, in the "Definitions" section of the policy, Section IV, Paragraph 3 as outline above, the defense costs authorized by the policy are defined as follows:
"Defense Costs and Expenses" means payments allocated to a specific claim for its investigation, settlement or defense, including:
(a) Attorney fees and all other litigation expenses;
* * *
(Emphasis added). A "Claim" is, in turn, defined as "a written demand (including service of suit or instigation of arbitration) received by an Insured for money damages." (Emphasis added).
Given this clear limiting language in the policy, it is evident that the policy contemplates the deduction of attorney's fees incurred in the defense of the insured, and not as Sphere Drake contends, in defense of the insurer for claims asserted against the insurer alone. Such a construction is consistent with the terms of the Insuring Agreement, by which the insurer agrees to "pay on behalf of the Named Insured those sums, in excess of the Underlying Insurance ... that the Insured becomes legally obligated to pay as damages because of bodily injury, personal injury or property damage ... which is caused by any person whilst acting within the course and scope of their employment by the Insured." (Emphasis added). Defense costs and expenses incurred directly by the insurer are neither sums that the insured is liable to pay nor that it should pay.
Any other construction of the language would result in absurd consequences. For *947 example, if the insured had sued the insurer for malpractice in handling the claim, the insurer should not be allowed to deduct the cost of its legal defense from the $1,000,000.00. Yet, under the broad interpretation urged by Sphere Drake, it could be argued that such defense costs arise from "any claim or suit" and are therefore deductible.
At the very least, the presence of this limiting language in the policy creates an ambiguity, which must be strictly construed against the insurer. LSA-C.C. art. 2056. In LSA-R.S. 22:655(D), the legislature expressly announced our state's public policy regarding liability insurance by stating that liability policies are issued "for the benefit of all injured persons" and that "it is the purpose of all liability policies to give protection and coverage to all insureds." LSA-R.S. 22:655(D); Marcus v. Hanover Ins. Co. Inc., 98-2040 (La.6/4/99), 740 So.2d 603, 606. Given this overriding public policy, if an insurer intends to deduct from its agreed limits of liability the defense costs expended on its own behalf, in addition to those expended on behalf of the insured, it must state its intention to do so in the policy in clear and unequivocal terms. In the instant case, we find no language that clearly and unequivocally authorizes the deduction from the amount of money allocated to protect the insured entity and to satisfy claims against the insured the additional sums expended by the insurer's own attorneys in defending and protecting the interests of the insurance company, as opposed to those of the insured. As a result, we hold that Sphere Drake may not deduct attorney's fees assessed by its separate counsel from the insured's policy limits.

Interest
The court of appeal also affirmed the trial court's determination that a reduction in the policy limits due to the payment of interest is against public policy. Plaintiffs argue that the reduction of the policy limits for interest due is prohibited by LSA-R.S. 13:4203, which provides:
Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto", which may be rendered by any of the courts.
It is well settled that, subject to the rules of insurance contract interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Williams v. U.S. Agencies Cas. Ins. Co., Inc., XXXX-XXXX (La.2/21/01), 779 So.2d 729; Reynolds v. Select Properties, 93-1480 (La.4/11/94), 634 So.2d 1180; Oceanonics, Inc. v. Petroleum Distrib. Co., 292 So.2d 190 (La.1974).
It is equally settled that legal interest runs from the plaintiff's first judicial claim against any party responsible for a single tortious act. All liability carriers owe interest on judgments in tort cases, up to their policy limits, from the date of judicial demand. Any policy provision which attempts to limit an insurer's liability for legal interest on the policy limits contravenes the public policy of LSA-R.S. 13:4203. Martin v. Champion Ins. Co., 95-0030 (La.6/30/95), 656 So.2d 991, 995; Hedgepeth v. Guerin, 96-1044 (La.App. 1 Cir. 3/27/97), 691 So.2d 1355, 1365, writ denied, 97-1377 (La.9/26/97), 701 So.2d 983.
Sphere Drake contends that the clear language of its policy includes interest as part of its limit, and it is not liable for interest "such that its ultimate payment would exceed its limits." Sphere Drake does not dispute that interest is owed. Rather, Sphere Drake contends that the language of the insurance policy *948 allows it to deduct the payment of interest from its policy limits. As set forth supra, pursuant to the policy, "defense costs and expenses" are to be deducted from the policy limits. Section II of the policy includes in "Defense Costs and Expenses" the following:
* * *
(f) interest on the full amount of any judgment that accrues before or after entry of the judgment and before Reinsurers have paid, or deposited in court the amount available for the judgment under the provisions of Section IILimits of Liability;
* * *
Thus, it is clear that, under LSA-R.S. 13:4203, all insurers owe interest on judgments in tort cases, up to their policy limits, from the date of judicial demand. Accordingly, we find that the provision of the policy which allows legal interest to be deducted from policy limits, in effect, obliterates Sphere Drake's statutory obligation to pay legal interest on the limits of the policy. We cannot allow any insurer, whether a surplus lines insurer or a traditional insurer, to circumvent the plain language as well as the spirit of LSA-R.S. 13:4203, construing its policies in a manner in which the payment of judicial interest would be passed on to either its insured or to the victim of a tortious act. Thus, we hold that interest is owed on this judgment, up to the limits of the policy. Accordingly, we affirm the court of appeal's determination interest may not be deducted from the limits of the policy.

Prejudgment Interest on Future Damages
Alternatively, Sphere Drake contends that if the deduction of interest from the policy limits is not allowed, then prejudgment interest is not allowed on awards of future damages. In this case, inter alia, the trial court awarded past medical expenses of $183,633, future medical expenses of $1,045,690, past income loss of $104,533, future income loss of $894,312, and $800,000 for past and future pain and suffering, mental anguish and loss of enjoyment of life. Legal interest was awarded on the entire amount. The court of appeal affirmed the award of interest, finding that prejudgment interest is applicable to awards for future damages. The court concluded that LSA-R.S. 13:4203 "makes no differentiation between elements of quantum related to past losses and those elements related to future losses." Edwards, 848 So.2d at 792-93.
In Milstead v. Diamond M Offshore, Inc., 95-2446 (La.7/2/96), 676 So.2d 89, this Court addressed the appropriateness of awarding prejudgment interest on future damages in a Jones Act/maritime personal injury case based on federal law. This Court pointed out that federal maritime law gives courts the discretion to award prejudgment interest. However, federal courts have declined to grant prejudgment interest on awards for future losses, including future earnings and future pain and suffering. This Court, quoting Martin v. Walk, Haydel & Associates, Inc., 794 F.2d 209 (5th Cir.1986), stated, "The rationale underlying this rule being that `recovery of interest' on losses not yet incurred effectively grants the recipient double recovery." Milstead, 676 So.2d at 97.[19]
*949 In Williams v. Rubicon, Inc., XXXX-XXXX (La.App. 1 Cir. 2/15/02), 808 So.2d 852, 864; writ granted, XXXX-XXXX (La.6/7/02), 818 So.2d 766, writ recalled as improvidently granted, XXXX-XXXX (La.12/4/02), 833 So.2d 942, an employee filed suit against his former employer for wrongful termination under the Family and Medical Leave Act. The trial court awarded the plaintiff back pay and front pay, along with legal interest from the date of judicial demand. The First Circuit reversed, stating:
With regard to the prejudgment interest awarded on the front pay award, it is well settled that prejudgment interest may not be awarded with respect to future damages. Williams v. Reading & Bates Drilling Co., 750 F.2d 487, 491 (5th Cir.1985).[[20]] An award of prejudgment interest is compensatory in nature and serves to compensate a plaintiff for the loss of the use of the money that the plaintiff would have otherwise earned had he not been unjustly discharged. Booker v. Taylor Milk Company, Inc., 64 F.3d 860, 868 (3d Cir.1995).[[21]] Thus, prejudgment interest may be recovered only on damages accrued as of the date of the judgment.
Williams, 808 So.2d at 864.[22]
We note that Williams v. Rubicon, Inc., supra, as well as the cases relied upon by Sphere Drake, which held that prejudgment interest cannot be recovered on future damages, had underlying claims based upon federal law. This distinction is vital because federal courts have the discretion to award prejudgment interest on causes of action based upon certain federal claims. For this basic reason, the cases relied upon by the parties herein are clearly distinguishable from the instant case. Therefore, *950 we must determine whether plaintiffs are allowed to collect prejudgment interest on all damages in general personal injury cases based upon state law.
The Third Circuit has consistently held that, pursuant to LSA-R.S. 13:4203, interest on all claims is recoverable from the date of judicial demand. In Louisiana Farms v. LA. Dept. of Wildlife, 95-845 (La.App. 3 Cir. 10/9/96), 685 So.2d 1086, writs denied, 97-0486 (La.4/4/97), 692 So.2d 420, 97-0507 (La.4/4/97), 692 So.2d 422, owners of an alligator and catfish farm filed suit against the Department of Wildlife and Fisheries, alleging that they suffered economic losses as a result of the wrongful constructive seizure of the farm. The plaintiffs prevailed, and the trial court awarded damages for past and future lost profits, along with interest from the date of judicial demand. The Third Circuit found no error in the trial court's ruling, stating:
La.R.S. 13:4203 specifically provides that the court shall award interest from the date of judicial demand. No differentiation is made between those elements of quantum which recompense for past losses and those which recompense for future losses.
Louisiana Farms, 685 So.2d at 1111. See also Bruce v. Rogers Oil Tool Services, Inc., 556 So.2d 922 (La.App. 3 Cir.1990).
Likewise, the Fifth Circuit, in Tastet v. Joyce, 531 So.2d 520 (La.App. 5 Cir.1988), in a personal injury claim pertaining to a motor vehicle accident, affirmed an award of interest on the entire amount of the judgment. The court stated:
However, "Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, `ex delicto', which may be rendered by any of the courts." La.R.S. 13:4203. No distinction is made between damages which compensate for past losses and those which compensate for future losses.
Id. at 523.
Similarly, in Schackai v. Tenneco Oil Co., 436 So.2d 729 (La.App. 4 Cir.1983), writ denied, 440 So.2d 759 (La.1983), the Fourth Circuit stated:
In Louisiana law, there are statutory and codal provisions which apply to awarding interest on judgments. La.C.C.P. Art. 1921[[23]] and La.R.S. 13:4203 apply in this case....
* * *
[T]he Louisiana law is clear that in suits for damages "ex delicto," the court shall award interest from the date of judicial demand. No differentiation is made between those elements of quantum which recompense for past losses and those which recompense for future losses. The trial judge correctly awarded interest from the date of judicial demand on all elements of the awards.
Id. at 735.
However, in Williams v. City of Monroe, 27,065, 27,066 (La.App. 2 Cir. 7/3/95), 658 So.2d 820, writs denied, 95-1998 (La.12/15/95), 664 So.2d 451, 95-2017 (La.12/15/95), 664 So.2d 452, a wrongful death/personal injury action, the trial court failed to award legal interest from the date of judicial demand. The Second Circuit, finding that the award of legal interest in tort cases is not discretionary pursuant to LSA-R.S. 13:4203, modified the judgment "to include legal interest in accordance with the law." Williams, 658 So.2d at 836. Citing O'Bryan v. Folk Const. Co., 594 *951 So.2d 900, 907 (La.App. 4 Cir.1991), judgment amended on reh'ing, a maritime case, the court concluded, "[P]rejudgment interest cannot be awarded on future damages, whether economic or noneconomic." Id.
A review of jurisprudence from other states reveals that some states allow the recovery of prejudgment interest on future damages, while others do not. The Supreme Court of North Dakota, in Gonzalez v. Tounjian, 665 N.W.2d 705 (N.D.2003), considered a state statute[24] regarding the award of prejudgment interest and concluded that interest on future damages should not be awarded in a tort case, stating:
There is an inherent illogic to awarding prejudgment interest on future damages. By definition, future damages are expenses which the plaintiff has not yet incurred at the time of trial, and which will only arise at some future date. Interest is ordinarily viewed as compensation for the use of money for a period of time, due when the period has passed. (Citation omitted).
Id. at 717.
A South Dakota statute expressly prohibits recovery of prejudgment interest on future damages. SDCL 21-1-13.1 provides in relevant part:
Any person who is entitled to recover damages, whether in the principal action or by counterclaim, cross claim, or third-party claim, is entitled to recover interest thereon from the day that the loss or damage occurred, except during such time as the debtor is prevented by law, or by act of the creditor, from paying the debt. Prejudgment interest is not recoverable on future damages, punitive damages or intangible damages such as pain and suffering, emotional distress, loss of consortium, injury to credit, reputation or financial standing, loss of enjoyment of life or loss of society and companionship.
* * *
(Emphasis added).
Similarly, the Michigan statute on prejudgment interest distinguishes between interest on future damages and interest on past damages, clearly disallowing the recovery of interest on future damages. MCL 600.6013(1) states:
Interest shall be allowed on a money judgment recovered in a civil action, as provided in this section. However, for complaints filed on or after October 1, 1986, interest shall not be allowed on future damages from the date of filing the complaint to the date of entry of the judgment. As used in this subsection, "future damages" means that term as defined in section 6301.[[25]]
Thus, the plain text of the Michigan statute requires an award of prejudgment interest on a civil judgment, except for "future damages." See Buzzitta v. Larizza Industries, Inc., 465 Mich. 975, 641 N.W.2d 593 (2002) (Corrigan, C.J. concurring *952 in the denial of the application for leave to appeal).
In John's Heating Service v. Lamb, 46 P.3d 1024 (Alaska, 2002), the Supreme Court of Alaska held that the trial court erred in awarding the plaintiffs prejudgment interest on the future damages portion of the jury's award, stating:
A jury award for future damages is discounted to present value as of the date of the verdict to reflect the fact that the damages are made part of a recovery before they would otherwise accrue. In this way, "the financial impact of the passage of time [is] incorporated into the jury's damage award, [and] any award of prejudgment interest on this amount would therefore constitute a double recovery."
Id. at 1041, quoting Sebring v. Colver, 649 P.2d 932, 936 (Alaska 1982).
Florida is another state which disallows the recovery of prejudgment interest on future damages. In Alvarado v. Rice, 614 So.2d 498 (Fla.1993), the Florida Supreme Court found that a successful plaintiff is entitled to prejudgment interest only "when it is determined that the plaintiff has suffered an actual out-of-pocket loss a some date prior to the entry of judgment." Id. at 499.
Contrarily, Texas, as well as some other states, allows the recovery of prejudgment interest on future damages. In Reyes-Mata v. IBP, Inc., 299 F.3d 504 (5th Cir. 2002), the federal court of appeal was called upon to interpret a Texas statute to determine whether a plaintiff was entitled to collect prejudgment interest on all damages in a personal injury matter based upon "common-law negligence and statutory negligence." The Texas Finance Code, § 304.102 provides, "A judgment in a wrongful death, personal injury, or property damage case earns prejudgment interest." In a Per Curiam opinion, the federal court stated:
The Texas Supreme Court has held that this provision entitles a plaintiff to prejudgment interest on its entire judgment, including future damages, because the statute makes no distinction between damages awarded in judgment for past damages and damages awarded for future damages. C & H Nationwide, Inc. v. Thompson, 903 S.W.2d 315, 324 (Tex. 1994) (referring to § 304.102's precursor statute Tex.Rev.Civ. Stat. Ann. Art. 5069-1.05, § 6).
* * *
Therefore, under a plain reading of the statute, plaintiffs are allowed to collect prejudgment interest on all damages when the case is a personal injury case.[]
Reyes-Mata, 299 F.3d at 507. See also International Turbine Services, Inc. v. VASP Brazilian Airlines, 278 F.3d 494 (5th Cir.2002) (Texas common law allows prejudgment interest on the total amount of the judgment, including future damages).
The issue has also been considered by the Supreme Judicial Court of Massachusetts. In Commonwealth v. Johnson Insulation, 425 Mass. 650, 682 N.E.2d 1323 (1997), the trial court entered a judgment against the defendant, ordering it to pay damages, plus interest calculated from the date the action was commenced. The statute at issue mandated the clerk of court to add interest to the amount of damages "[i]n any action in which a verdict is rendered or a finding made or an order for judgment made for pecuniary damages for personal injuries to the plaintiff or for consequential damages, or for damage to property." G.L. c. 231 § 6B. The defendants argued that prejudgment interest should only be charged on that portion of *953 damages representing costs already incurred before the date of the judgment, and not on the cost that had yet to be undertaken. The Massachusetts Supreme Court disagreed, concluding that the award of interest was properly calculated on the full amount of damages. The court stated:
The cost of asbestos abatement, whether already incurred by the Commonwealth or merely projected, is not itself the damage or injury suffered by the Commonwealth, but is rather a measurement of the appropriate compensation for that damage. The injury to the Commonwealth's property occurred when asbestos-containing products were installed in its buildings. Any damages to which the Commonwealth was entitled, whatever that amount might be and whenever it might be awarded, was due from the moment of injury. The Commonwealth's projected abatement costs are not "future damages," but are rather an estimation of damage that has already occurred, for which compensation is already due. The cost of repairs is the outlay necessary to restore property to its preinjury condition; in undertaking a repair, the injured party substitutes one measure of damages, a cash outlay, for another measure, the diminution in the property's value occasioned by the injury. Whether measured by repair cost or diminution in value, the damage has already been suffered, and future events merely place a cash value on the extent of the loss.... Similarly, in the case of personal injury, prejudgment interest is to be awarded for the loss of earning capacity, even though it is future income that is affected by that loss.
Id. at 1333-34 (Internal citations omitted).
In Uniroyal Goodrich Tire Co. v. Mercer, 111 Nev. 318, 890 P.2d 785 (1995), the Nevada Supreme Court, in a products liability action, held that the trial court properly awarded interest on future damages, pursuant to the provisions of the state statute. The court stated:
The statutory language makes no distinction between past and future damages in the judgment.... [T]he applicable [statute] authorizes the judge to include interest on the entire judgment awarded by the jury.
Id. at 789. The court went on to recognize that the statute authorizing the inclusion of prejudgment interest is not compensatory in nature. "Rather, it provides a financial incentive for early settlement of litigation. The type of damages ultimately awarded are immaterial to the basic purpose of the statute." Id. at 790.
Similarly, in Scholz v. Metropolitan Pathologists, P.C., 851 P.2d 901 (Colo. 1993), the Colorado Supreme Court held that the trial court erred in awarding prejudgment interest only for "past damages," and refusing to award prejudgment interest for "future damages" pursuant to Colorado's prejudgment interest statute.[26] The court stated:
Our unwillingness to distinguish between different forms of compensatory damages, i.e., past and future damages, is entirely consistent with language of the prejudgment interest statute, which itself draws no such distinction. It simply *954 speaks of "damages assessed," understood by this court to mean "compensatory damages," and instructs the court to add interest to such damages.
Consequently, nothing in [the statute] supports the trial court's differentiation between past and future damages for purposes of calculating and awarding prejudgment interest  it simply mandates the award of prejudgment interest for all compensatory damages assessed.
* * *
We are mindful of the issues surrounding the award of prejudgment interest to future damages and the varying conclusions reached by those who have considered the issue. We find, however, that based on the language of the prejudgment interest statute, it is not for this court to reach its own conclusion regarding those issues but rather, to enforce the statute as written. If our conclusion here does not comport with the General Assembly's intention in passing the prejudgment interest statute it is the legislature, not the court, that must rewrite it.
Id. at 908-909 (Internal footnote omitted).
Also, in Lester v. Sayles, 850 S.W.2d 858 (Mo.1993), the Missouri Supreme Court affirmed an award of prejudgment interest on the entire judgment, including future damages. The Court found that the relevant statute provided for prejudgment interest "on all money due upon any judgment or order," and thus, "clearly contemplate[d] the result reached by the trial court."[27]Id. at 874.
Likewise, the Supreme Court of Iowa has concluded that prejudgment interest applies to awards for future damages. In Mossman v. Amana Society, 494 N.W.2d 676 (Iowa 1993), the court found that future damages are not excepted from the plain language of the statute pertaining to prejudgment interest.[28]
In Ruff v. Weintraub, 105 N.J. 233, 519 A.2d 1384 (1987), the New Jersey Supreme Court recognized that the award of prejudgment interest for amounts that will not be incurred by a plaintiff until after judgment is "questionable," but held that the trial court may award prejudgment interest on damages for both past and future losses unless circumstances of case are "exceptional."[29] The court stated:
The only qualification to the Rule on prejudgment interest is that "in exceptional cases the court may suspend the *955 running of such prejudgment interest." R. 4:42-11(b). This language has been interpreted to mean that "prejudgment interest can be withheld only where it is demonstrated that the policy, spirit and intent of the rule are patently inapposite to the circumstances at hand." (Citation omitted). Such is not the case here. The applicability of a compensation rationale for prejudgment interest may be questionable in the case of future losses, since it can be argued that those damages accrue after the judgment. However, the public interest in encouraging settlements is an adequate independent basis for the application of the prejudgment interest rule in this case. Thus, this is not an "exceptional" case, as that term has been interpreted.
Id. at 1390-91.
The Louisiana Legislature has elected not to expressly bar the recovery of prejudgment interest as it relates to future damages. LSA-R.S. 13:4203 provides:
Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto", which may be rendered by any of the courts.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9.
The language of LSA-R.S. 13:4203 is clear and unambiguous: no distinction is made between judgments sounding in "past damages" and those sounding in "future damages." The plain language of the statute makes it evident that it applies to "all judgments, sounding in damages...." No exception is made for future damages. Thus, without action from the legislature, we decline to distinguish between past and future damages in the award of legal interest.
For these reasons, we reject Sphere Drake's argument, and we affirm the lower courts' determinations that prejudgment interest is recoverable on awards for future damages.

CONCLUSION
For the reason detailed herein, we reverse the lower courts' determination that the insurer may deduct legal fees from the policy limits incurred on its own behalf. In all other aspects, the court of appeal's ruling is affirmed. We remand this matter to the trial court to calculate the remainder of the policy limits, after the deduction of defense costs incurred on behalf of the insured only, and the calculation of interest on the entire judgment from the date of judicial demand.
REVERSED IN PART; AFFIRMED IN PART; REMANDED.
CALOGERO, C.J., concurs and assigns reasons.
VICTORY, J., concurs.
CALOGERO, Chief Justice concurring:
On the relevant issue here, the defendant insurer hired a lawyer to defend the insured against the claims asserted against the insured, and hired a separate lawyer to defend itself regarding two matters: (1) its own exposure because of Louisiana's Direct Action Statute, La.Rev.Stat. 22:655, for liability of its insured arising out of the accident, and (2) its own exposure arising out of the plaintiffs' claim for penalties under La.Rev.Stat. 22:1220 because of its alleged breach of its statutory duty to promptly respond to plaintiffs' claim.
*956 The insurer's exposure under the Direct Action Statute[1] might arguably be little more than its duty to participate in the defense of claims or suits against the insured (as a statutorily allowed direct defendant), even though the claim is one against the insured arising out of the insured's fault. The same cannot be said of the claim against the insurer for breach of its duty under La.Rev.Stat. 22:1220 to respond promptly to plaintiffs' claim. Whether the latter claim is supportable under law or not,[2] it arises out of a duty imposed on the insurer alone. Presumably, it was the plaintiffs' claim under La. Rev.Stat. 22:1220 that prompted the insurer in this case to secure separate unconflicted counsel. Although I agree with the majority that the fees charged by an attorney to defend against a claim for penalties asserted against the insured alone may not be deducted from the limits of the surplus line insurance policy, I am not prepared to hold the same for fees charged by an attorney to defend an insurer against claims arising under the Direct Action Statute.[3] Thus, I concur in the majority decision.
NOTES
[1] Also made defendants were the City of Westlake and one of its officers, Henry Simms, who allegedly passed the accident scene, and the City's insurer; the driver of the vehicle (Florence Baldwin) that was rear-ended by Daugherty and her insurer; the driver (Gary Bailey) who rear-ended the left-turning motorist in the original accident and his insurer; and the parties involved in a separate accident involving the ambulance responding to the call and their insurers.
[2] The jury awarded Jaymie Edwards $185,000 in past due medical expenses, $1,250,000 in future medical expenses, $84,100 in past income loss, and $346,160 in future income loss. Each of the Edwards children was awarded $25,000 for loss of consortium. The jury did not award Jaymie Edwards any sum for past and future pain and suffering, mental anguish, or loss of enjoyment of life.
[3] The trial judge awarded past medical expenses of $183,633, future medical expenses of $1,045,690, past income loss of $104,533 and future income loss of $894,312. He also awarded Jaymie Edwards $800,000 for past and future pain and suffering, mental anguish and loss of enjoyment of life. He awarded $150,000 for loss of consortium to Jennifer Edwards, and $100,000 for loss of consortium to both Janet Edwards and Jaymie Edwards, II.
[4] Quantum was altered as follows: for past medical expenses ($185,000 to $183,633), future income loss ($346,160 to $894,312) and loss of consortium ($25,000 for each of the three children to $100,000 for each child). The trial judge also awarded $800,000 for past and future pain and suffering and loss of enjoyment of life.
[5] LSA-R.S. 33:1481(4) provides:

"Public liability" means liability to which a sheriff may be subject either directly or by reason of liability rising out of an act of his employee, agent, or officer in the course and scope of employment.
[6] LSA-R.S. 33:1481(3) provides:

"Interlocal risk management program" means a written plan and activities carried out under such plan by an interlocal risk management agency to reduce risk of loss on account of public liability, including loss prevention and control techniques and the processing and defense of claims brought against members of the agency.
[7] LSA-R.S. 33:1481(1) provides:

"Group self-insurance fund" means a pool of public monies established by an interlocal risk management agency from contributions of its members in order to pool public liability risks, or to purchase a joint policy or policies of insurance providing protection against said risks, or both.
[8] LSA-R.S. 22:5(17) provides:

"Surplus lines insurance" means any property and casualty insurance in this state on properties, risks, or exposures, located or to be performed in this state, permitted to be placed through a licensed surplus lines broker with an approved unauthorized insurer.
[9] LSA-R.S. 22:5(2) provides:

An "approved unauthorized insurer" means an insurer without a certificate of authority, or otherwise qualified under the provisions of this Code, and which is on the list of approved unauthorized insurers ... and from which a licensed surplus lines broker may procure insurance....
[10] LSA-R.S. 22:1259 provides:

Insurance contracts procured as surplus line coverage from unauthorized insurers in accordance with this Part shall be fully valid and enforceable as to all parties, and shall be given recognition in all matters and respects to the same effect as like contracts issued by authorized insurers.
[11] Another excess insurer, Lloyd's of London, had paid $1,000,000.00 to plaintiffs pursuant to the terms of its policy. After the May 9, 2000 judgment, Lloyd's of London reimbursed Sphere Drake the amount of $307,805.40 for payments made by Sphere Drake on claims, other than plaintiffs', after the date of plaintiffs' judgment. Sphere Drake deposited that amount into the registry of the court, and plaintiffs withdrew those funds. Plaintiffs admit that they have been paid $645,009.08 by Sphere Drake towards satisfaction of the judgment.
[12] The parties stipulated that Sphere Drake is an admitted carrier and that the policy at issue is a surplus lines policy.
[13] In an argument not presented to the lower courts, or even to this Court in the application for certiorari, Sphere Drake contends that plaintiffs lack standing to contest the deduction of expenses from the policy limits because the deduction does not benefit or harm them in any manner. Although this argument can only be characterized as nonsensical, we decline to address it, as it was not raised in the lower courts.
[14] DWL provisions commonly appear in policies covering liabilities that might be considered high risk. Thus, they appear in medical malpractice policies, legal malpractice policies, directors and officer's liability policies and in some manuscript commercial general liability policies. The complexity of cases in those areas, as well as the amount of dollars at issue, makes the cases hard fought and the defense costs substantial. Gregory S. Munro, DEFENSE WITHIN LIMITS: THE CONFLICTS OF "WASTING" OR "CANNIBALIZING" INSURANCE POLICIES, 62 Mont. L.Rev. 131 (2001).
[15] Minn.Stat. § 60A.08, subd. 13 provides:

Reduction of limits by costs of defense prohibited. (a) No insurer shall issue or renew a policy of liability insurance in this state that reduces the limits of liability stated in the policy by the costs of legal defense.
(b) This subdivision does not apply to:
(1) professional liability insurance with annual aggregate limits of liability of at least $100,000, including directors' and officers' and errors and omissions liability insurance;
(2) environmental impairment liability insurance;
(3) insurance policies issued to large commercial risks; or
(4) coverages that the commissioner determines to be appropriate which will be published in the manner prescribed for surplus lines insurance in section 60A.201, subdivision 4.
(c) For purposes of this subdivision, "large commercial risks" means an insured whose gross annual revenues in the fiscal year preceding issuance of the policy were at least $10,000,000.
[16] Ark.Code Ann. § 23-79-307(5)(A) provides:

Policies containing provisions that would reduce the limit of liability available for judgments or settlements by the amount of payment made for defense cost or claim expenses shall not be approved by the Insurance Commissioner unless a separate limit for defense costs equal to one hundred percent (100%) of the annual aggregate limit of liability stated in the policy for judgments or settlements is offered for defense costs or claims expenses to the insured. However, no policy covering automobile liability insurance may contain the defense within the limits concept.
[17] Section IV(1) of the policy defines "Annual Aggregate Limit" as "the applicable maximum amount for which the Underwriters will be liable, regardless of the number of covered claims."
[18] However, this Court has held that while the primary insurer has the primary duty to defend, if a claim is within the limits of the excess insurance, there is also a duty by the excess insurer to defend. American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969); Hobbs v. Fireman's Fund American Ins. Companies, 339 So.2d 28 (La.App. 3d Cir.1976), writ denied, 341 So.2d 896 (La.1977); S. McKenzie and H. Johnson, INSURANCE LAW AND PRACTICE, § 214 in 15 LOUISIANA CIVIL LAW TREATISE (1986).
[19] The First, Fourth, and Fifth Circuit Courts of Appeal have followed suit in Jones Act cases, finding that prejudgment interest does not apply to awards for future damages. See Derouen v. Mallard Bay Drilling, XXXX-XXXX (La.App. 1 Cir. 6/22/01), 808 So.2d 694; Wright v. Hollywood Marine, Inc., 99-3221 (La.App. 4 Cir. 5/23/01), 789 So.2d 49; Melerine v. State, Dept. of Natural Resources, XXXX-XXXX (La.App. 4 Cir. 11/8/00), 773 So.2d 831, writ denied, 01-0382 (La.4/12/01), 789 So.2d 595; Nielsen v. Northbank Towing, Inc., 99-1118 (La.App 1 Cir. 7/13/00), 768 So.2d 145, writ denied, 00-2423 (La.11/3/00), 773 So.2d 149; Williams v. Maritime Overseas Corp., 98-3009 (La.App. 4 Cir. 1/13/99), 746 So.2d 689; Johnson v. Louisiana Dock Co., 03-39 (La.App. 5 Cir. 4/29/03), 846 So.2d 145; Crane v. Diamond Offshore Drilling, Inc., 99-166 (La.App. 5 Cir. 9/15/99), 743 So.2d 780; Walton v. Cooper/T.Smith Stevedoring, 97-0100 (La.App. 4 Cir. 3/4/98), 709 So.2d 941; Jenkins v. Sonat Offshore U.S.A., Inc., 96-2504 (La.App. 1 Cir. 12/29/97), 705 So.2d 1184; Cappiello v. Exxon Corp., 96-2418 (La.App. 4 Cir. 5/28/97), 695 So.2d 1097; Howell v. American Casualty Co. of Reading, Pennsylvania, 96-0694 (La.App. 4 Cir. 3/19/97), 691 So.2d 715, writs denied, 97-1329, 97-1379, 97-1426, (La.9/5/97), 700 So.2d 512, 515, 518; O'Bryan v. Folk Const. Co., 594 So.2d 900, 907 (La.App. 4 Cir.1991), judgment amended on reh'ing.
[20] Williams v. Reading & Bates Drilling Co., supra, was a maritime case in which the federal court, applying federal law, concluded that prejudgment interest does not apply to future damages. As this Court noted in Milstead, supra,

[F]ederal courts have the discretion to award prejudgment interest on causes of action based upon their admiralty jurisdiction. However, courts have clearly chosen not to grant prejudgment interest on awards for future losses, including future earnings and future pain and suffering.
Milstead, 676 So.2d at 97.
[21] The plaintiff in Booker, supra, brought a Title VII action against his employer. The federal district court found that the plaintiff was entitled to back pay, but he was not entitled to prejudgment interest of the back pay award. The court of appeal reversed, concluding that the plaintiff was entitled to prejudgment interest for the loss of the use of the amount included in the back pay award.
[22] However, in prior cases, Schwamb v. Delta Air Lines, Inc., 516 So.2d 452 (La.App. 1 Cir.1987), writ denied, 520 So.2d 750; Sharkey v. Sterling Drug, Inc., 600 So.2d 701 (La.App. 1 Cir.1992), writ denied, 605 So.2d 1099 (La.1992), the First Circuit affirmed the trial court's award of interest on all damages from the date of judicial demand.
[23] LSA-C.C.P. art. 1921 provides:

The court shall award interest in the judgment as prayed for or as provided by law.
[24] N.D.C.C. § 32-03-05 provides:

When interest in discretion of court or jury. In an action for the breach of an obligation not arising from contract and in every case of oppression, fraud, or malice, interest may be given in the discretion of the court or jury.
[25] MCL 600.6301 provides:

(a) "Future damages" means damages arising from personal injury which the trier of fact finds will accrue after the damage findings are made and includes damages for medical treatment, care and custody, loss of earnings, loss of earning capacity, loss of bodily function, and pain and suffering.
(b) "Personal Injury" means bodily harm, sickness, disease, death, or emotional harm resulting from bodily harm.
[26] Section 13-21-101, 6A C.R.S. (1987) provides, in part:

In all actions brought to recover damages for personal injuries sustained by any person resulting from or occasioned by the tort of another person ... it is lawful for the plaintiff in the complaint to claim interest on the damages claimed from the date the action accrued.... When such interest is so claimed, it is the duty of the court in entering judgment for the plaintiff in such action to add to the amount of damages assessed by the verdict of the jury, or found by the court, interest on such amount ... calculated from the date such suit was filed to the date of satisfying the judgment....
[27] The Missouri statute at issue, § 408.040 RSMo Supp. 1992, provides, in pertinent part:

1. Interest shall be allowed on all money due upon any judgment or order of any court from the day of rendering the same... all such judgments and orders ... shall bear nine percent per annum ...
2. In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives and the amount of the judgment or order exceeds the demand for payment or offer of settlement, prejudgment interest, at the rates specified in subsection 1 of this section, shall be calculated from the date sixty days after the demand or offer was made, or from the date the demand or offer was rejected without counter offer, whichever is earlier. Any such demand or offer shall be made in writing and sent by certified mail and shall be left open for sixty days unless rejected earlier....
[28] At the time the plaintiff's suit was filed, the Iowa statute provided that interest "shall accrue from the date of the commencement of the action." However, after the plaintiff's lawsuit was filed, Iowa Code, § 668.13 was amended to provide that "Interest awarded for future damages shall not begin to accrue until the date of the entry of the judgment."
[29] The New Jersey statute at issue, Rule 4:42-11(b), allowed for the suspension of prejudgment interest only in "exceptional cases."
[1] Prior to the 1992 amendments to the Direct Action Statute, suits could be brought against the insurer alone. Following those amendments, both the insurer and the insured must be named in suits, except in a few enumerated exceptions.
[2] See Theriot v. Midland Risk Insurance Co., 95-2895 (La.5/20/97), 694 So.2d 184, which arguably supports casting insurers in favor of third-party claimant, and Langsford v. Flattman, XXXX-XXXX (La.1/21/04), 864 So.2d 149, which held that third party victims have no cause of action against an insurer to recover penalties.
[3] This issue need not be decided in this case, in my view, especially since regarding the Direct Action claim as a separate matter, insurer hired two lawyers, not one.