808 So.2d 798 (2002)
Ray ARNETTE, et al.
v.
NPC SERVICES, INC., et al.
No. 2000 CA 1776.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
*799 Andrew H. Meyers, David C. Hesser, Lafayette, Counsel for Defendant/1st Appellant, NUS Corporation.
John W. deGravelles, Locke Meredith, Stephen M. Irving, David L. Bateman, Baton Rouge, Counsel for Plaintiffs/2nd Appellants, Ray A. Arnette, et al.
Gerald L. Walter, Jr., Baton Rouge, Counsel for Defendants/Appellees, NPC Services, Inc., et al.
Martin E. Golden, Baton Rouge, S. Dwight Stephens, New York, NY, Counsel for Defendant/Appellee, First State Insurance Company.
Joseph B. Morton, III, Metairie, Counsel for Defendant/Appellee, Pacific Insurance Company.
Stephen W. Glusman, Baton Rouge, Counsel for Defendant/Appellee, Celanese Americas Corp.
Dan E. West, Baton Rouge, Counsel for Defendant/Appellee, National Union Fire Insurance Company of Pittsburg, PA.
James Kirk Piccione, Lafayette, Counsel for Defendant/Appellee, Provident Life and Accident Insurance Company.
*800 Larry G. Canada, New Orleans, Counsel for Defendant/Appellee, Continental Casualty Company.
Thomas E. Balhoff, Daniel R. Atkinson, Jr., Baton Rouge, Counsel for Defendant/Appellee, Harmony Corporation.
Before: GONZALES, KUHN, and CIACCIO,[1] JJ.
GONZALES, Judge.
In this appeal, the plaintiffs and an insured defendant challenge a trial court's grant of summary judgment in favor of an insurer based on a finding of lack of coverage under the applicable policies.

FACTUAL AND PROCEDURAL BACKGROUND
In September of 1988, multiple plaintiffs filed a petition for damages claiming injury as a result of exposure to chemicals and fumes allegedly attributable to the remediation of a hazardous waste disposal site, known as the PetroProcessors site, in East Baton Rouge Parish. The plaintiffs consist of employees of Reynolds Metals Corporation and Schuylkill Metal Works, businesses located near the PetroProcessors site. Initially, the plaintiffs named NPC Services, Inc. (NPC) as the sole defendant, alleging that NPC was a consortium of corporations engaged in the cleanup of the PetroProcessors site. Later, NUS Corporation (NUS) and First State Insurance Company of Wilmington, Delaware (First State), among others, were added as defendants. NUS was hired by NPC as a health and safety consultant for the remediation project, and First State was NUS's insurer during the relevant period.
On September 1, 1999, First State filed a motion for summary judgment, claiming the two excess general commercial liability policies issued to NUS excluded coverage for the plaintiffs' alleged injuries under a "pollution hazard exclusion" and a "professional liability exclusion" contained in the policies. On November 8, 1999, a hearing was held on the motion, and, on May 15, 2000, the trial court signed a judgment, granting First State's motion and dismissing the plaintiffs' suit against First State.
The plaintiffs and NUS separately appealed from the adverse judgment, contending the trial court erred in concluding there was no coverage under the pollution hazard and professional liability exclusions of First State's policies. Additionally, the plaintiffs contended the trial court erred in granting the summary judgment, because the documents submitted in support of First State's motion were not properly certified as "true copies" by a person with personal knowledge of such fact.
In our original decision, we remanded this case for a retrial of First State's motion for summary judgment based on our conclusion that the appellate record did not contain the evidence necessary to review the trial court's judgment. Ray Arnette, et al. v. NPC Services, Inc. et al., 00-1776 (La.App. 1 Cir. 9/28/01), ___ So.2d ___, 2001 WL 1150004. First State filed an application for rehearing, contending its summary judgment evidence was properly filed into the trial court record with its motion and should have been part of the appellate record. We granted the rehearing, vacated our original decision, and ordered the clerk of the trial court to supplement the appellate record with the summary judgment evidence. Ray Arnette, et al. v. NPC Services, Inc. et al., 00-1776 (La.App. 1 Cir. 12/11/01) (on rehearing). The record has been supplemented and we now address the merits of the appeals.

*801 SUMMARY JUDGMENT

Personal Knowledge Requirement
In their first assignment of error, the plaintiffs contend the trial court erred in granting summary judgment, because documents relied upon by First State in support of its motion were certified as true copies by Mr. Martin Golden, counsel for First State, whose affidavit does not demonstrate that he had personal knowledge of such fact.[2] In response, First State argues the documents are admissible because it served requests for admissions on plaintiffs to satisfy the admissibility requirement, plaintiffs never served responses, and, thus, the requests are deemed admitted.[3]
We need not address these contentions of the parties. Louisiana Code of Civil Procedure article 966(B) states that a motion for summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Once the appellate record was supplemented by the trial court, the record demonstrates that the exhibits relied upon by First State in support of its motion were attached to its motion.[4] The written motion for summary judgment is a "pleading" under La. C.C.P. art. 852; and written documents may be attached to pleadings and made a part thereof for all purposes. La. C.C.P. art. 853; Anderson v. Allstate Ins. Co., 93-1102 (La.App. 1 Cir. 4/8/94), 642 So.2d 208, 213 (on rehearing), writ denied, 94-2400 (La.11/29/94), 646 So.2d 404. Thus, the exhibits herein were admissible as part of First State's motion for summary judgment under La. C.C.P. art. 966 and did not need to be attached to an affidavit to be properly made part of the record. Thus, Mr. Golden's personal knowledge or lack thereof is irrelevant. This assignment of error is without merit.

Summary Judgment and Interpretation of Insurance Contracts
An appellate court reviews a trial court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Shelton v. Standard/700 *802 Associates, 01-0587 (La.10/16/01), 798 So.2d 60, 64-65. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. The burden of proof on a motion for summary judgment is on the movant. LSA-C.C.P. art. 966(C)(2). An insurer seeking to avoid coverage through summary judgment must prove that some exclusion applies to preclude coverage. Gaylord Chemical Corporation v. Pro-Pump, Inc., 98-2367 (La.App. 1 Cir. 2/18/00), 753 So.2d 349, 352.
An insurance policy is an agreement between parties and should be interpreted using ordinary contract principles. Ledbetter v. Concord Gen. Corp., 95-0809 (La.1/6/96), 665 So.2d 1166, 1169, rehearing denied, amended on other grds, 95-0809 (La.4/18/96), 671 So.2d 915. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. La. C.C. art. 2046; Gaylord Chemical Corporation, 753 So.2d at 352. The court should not strain to find ambiguity where none exists. Id. However, if there is any doubt or ambiguity as to the meaning of a provision in an insurance policy, it must be construed in favor of the insured and against the insurer. See La. C.C. art. 2056. When the ambiguity relates to an exclusionary clause, the law requires that the contract be interpreted liberally in favor of coverage. Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081, 1090 (La.1983); Ledbetter, 665 So.2d at 1169. Whether a contract is ambiguous is a question of law. Gaylord, 753 So.2d at 353.

Professional Liability Exclusion
In granting summary judgment in favor of First State, the trial court determined there was no coverage under the applicable policies issued to NUS based on the following exclusion:
This policy shall not apply to any claims or losses arising out of any breach of professional duty by reason of any negligent act, error or omission whenever or wherever committed or alleged to have been committed on the part of the insured... in the conduct of any business conducted by or on behalf of the insured.
The plaintiffs and NUS argue there are factually disputed issues regarding whether all acts of negligence allegedly committed by NUS are excludable under the above provision.[5] Further, NUS argues that the plaintiffs' broad allegations preclude summary judgment. For example, because plaintiffs have not specified which NUS employees committed the alleged acts of negligence, NUS argues it is impossible to determine whether or not the employees were "professionals."
We note the First State policies at issue do not define "professional duty."[6] Thus, it is unclear what negligent conduct is excluded from coverage by the professional liability exclusion. Further, the absence of allegations regarding the identity of the negligent actor(s) creates disputed issues of fact regarding whether the conduct would be excluded under the professional liability exclusion. As the *803 movant, First State had the burden of proving that the negligent acts of NUS as alleged by the plaintiffs fell within the scope of NUS's "professional duty." See Gaylord, 753 So.2d at 352. Mere reference to the contract between NUS and NPC and to the Remedial Action Health and Safety Plan, without evidence explaining the scope of the work to be performed by NUS, does not satisfy First State's burden. Although First State submitted deposition excerpts of NPC and NUS employees, First State does not explain how the testimony of these individuals demonstrates that NUS's activities are precluded from coverage by the professional liability exclusion.
Further, because "professional duty" is undefined in the First State policy, we conclude the professional liability exclusion is ambiguous and must be construed in favor of NUS and against First State. See La. C.C. art. 2056. Under this rule of contract interpretation, we agree with the plaintiffs and NUS that, under a reasonable interpretation of the First State policy, coverage may exist for some acts of negligence alleged by plaintiffs. The trial court legally erred in finding otherwise.

Pollution Hazard Exclusion
After this matter was lodged on appeal, the parties notified this court by letter and by supplemental memoranda that Ducote v. Koch Pipeline Company, 98-0942 (La.1/20/99), 730 So.2d 432, the previously controlling case addressing the pollution hazard exclusion, had been overruled by Doerr v. Mobil Oil Corporation, 00-0947 (La.12/19/00), 774 So.2d 119, on rehearing, 00-0947 (La.3/16/01), 782 So.2d 573. In its supplemental brief, First State acknowledges that under Doerr, the present record does not support summary judgment in its favor on the pollution hazard exclusion. Thus, we reverse the grant of summary judgment based on this exclusion.

DECREE
For the foregoing reasons, the judgment of the trial court is REVERSED. Based on the state of the record at the time of the ruling below, First State is not entitled to summary judgment under the pollution hazard exclusion or the professional liability exclusion of the policies it issued to NUS. This matter is REMANDED for further proceedings. Costs of the appeal are assessed to First State.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] We note that the appellate record, even after supplemented by the clerk of the trial court, does not contain a copy of Mr. Golden's affidavit.
[3] The record contains a copy of First State's requests for admissions to the plaintiffs wherein First State requests that plaintiffs admit that the First State insurance policies, the Remedial Action Health and Safety Plan, and the NPC/NUS contract are "true and correct, authentic, and admissible." However, the documents referenced by First State are not attached to the request for admissions filed into the record.
[4] In its motion for summary judgment, First State contends:

"[T]here are no genuine issues of material fact remaining for trial with respect to First State's alleged liability. See Exhibit "A" (First State's policies), "B" (the Remedial Action Health and Safety Plan pertaining to the remediation of the PetroProcessors Site), "C" (the contract between NPC Services, Inc. and NUS Corporation), "D" (plaintiffs' Second Supplemental and Amending Petition), "E" (excerpts of the deposition of Edward Robertson), "F" (excerpts of the deposition of John Miken), "G" (excerpts of the deposition of Gary Beswick), and "H" (excerpts of the deposition of Curtis Crumholt)."
To insure the court is aware the exhibits are part of the pleading, an appropriate statement would be to list the exhibits and state that they are attached thereto and filed contemporaneously herewith, as though copied therein in extenso. See Frisard v. Autin, 98-2637 (La.App. 1 Cir. 12/28/99), 747 So.2d 813, 817, writ denied, 00-0126 (La.3/17/00), 756 So.2d 1145.
[5] According to plaintiffs, their allegations that NUS used unqualified personnel on the sites, used insufficient manpower to properly monitor the sites, used ineffective and inadequate monitoring equipment, and failed to use appropriate safety equipment are allegations of negligent "administrative" conduct, not allegations of negligent "professional" conduct.
[6] In an effort to ascribe a jurisprudential meaning to the term "professional duty," First State cites Aker v. Sabatier, 200 So.2d 94, 97 (La.App. 1 Cir.), writs denied, 251 La. 48, 49, 202 So.2d 657, 658 (1967), wherein the term "professional services" was defined as "services performed by one in the ordinary course of the practice of his profession, on behalf of another, pursuant to some agreement, express or implied, and for which it could reasonably be expected some compensation would be due."