900 So.2d 232 (2005)
Ronald Dale BARRINGER, Plaintiff-Appellant
v.
Dr. Robert RAUSCH, Defendant-Appellee.
No. 39,553-CA.
Court of Appeal of Louisiana, Second Circuit.
April 6, 2005.
*233 A. Richard Snell, Bossier City, for Plaintiff-Appellant.
Julie Mobley Lafargue, Shreveport, for Defendant-Appellee, St. Paul Fire & Marine Insurance Co.
Davidson, Nix & Jones, by Allison Anne Jones, Shannan L. Hicks, Shreveport, for Defendant-Appellee, Dr. Robert A. Rausch.
Before BROWN, CARAWAY and PEATROSS, JJ.
*234 CARAWAY, J.
In this case, the husband who sought therapy from the defendant/ clinical psychologist claims that the defendant discouraged reconciliation between the spouses because of the defendant's romantic relationship with the wife. The claim is therefore a professional liability claim which the husband asserts is covered by the contract of insurance issued by appellee to the psychologist. Raising the sexual activity exclusion contained in its policy, the appellee moved for summary judgment which was granted by the trial court. Based upon the evidence and our interpretation of the policy exclusion, we reverse and remand.

Facts
This case arises out of the personal and professional relationships between appellant, Ronald Dale Barringer ("Ronald") and appellant's ex-wife, Virginia Hawkins Barringer ("Virginia"), and Dr. Robert A. Rausch ("Dr. Rausch"), a clinical psychologist with whom both Ronald and the Barringers' teenage son, Cole, had a therapist/patient relationship. Before separating in August, 1994, Ronald and Virginia were married for 18 years. They had two teenage sons. Ronald moved out of the matrimonial domicile at his wife's request and Virginia filed for divorce the following month. The judgment of divorce was signed on May 18, 1995. Virginia began counseling at the suggestion of her family doctor in late April, 1995, at the Family Therapy Center, Inc.
Virginia met Dr. Rausch for the first time while she was waiting to see her therapist, Dixie Richards. When Dr. Rausch passed through the waiting room area, the two struck up a conversation. Virginia asked Dr. Rausch if he would agree to see her son Cole about issues arising out of the pending divorce. Cole's individual counseling sessions with Dr. Rausch began in May and consisted of three visits during that month. Virginia and Cole met with Dr. Rausch together at his first session on May 3. Cole's next session occurred on May 15. The final session with Cole occurred on May 24, 1995, and included Ronald and Virginia. Ronald also started individual therapy sessions with Dr. Rausch which occurred on May 19 and June 14. Ronald testified in his deposition that he consulted Dr. Rausch because "[he] wanted [his] wife and family back."
In mid-June, Dr. Rausch phoned Virginia at home and invited her on an out of town trip to New Orleans during the weekend of June 16, 1995. Virginia and Dr. Rausch initiated a sexual relationship at this time. Two weeks later, Virginia and her son, Cole, went on a vacation with Dr. Rausch and his two sons to Gulf Shores. During a third trip to Mexico in July, 1995, Dr. Rausch asked Virginia to marry him. Ronald testified that he stopped therapy with Dr. Rausch when he learned about Virginia and Cole's trip with Dr. Rausch in late June. Dr. Rausch testified in his deposition that his last professional contact with any of the Barringers was on June 14, 1995.
On May 14, 1996, Ronald filed a suit for damages arising out of Dr. Rausch's alleged professional negligence. The petition asserts that Dr. Rausch breached his professional duties by intentionally seeking to defeat the re-establishment of Ronald's relationships with Virginia and Cole for Dr. Rausch's personal motives.
During the period of time of Dr. Rausch's professional relationship with Ronald, Dr. Rausch was insured under a policy of professional liability insurance issued by St. Paul Fire and Marine Insurance Co. ("St. Paul"). The St. Paul policy provided professional liability insurance for Dr. Rausch in the listed profession of *235 clinical psychologist. The pertinent provisions of the policy are as follows:
Liability. We'll pay amounts you or others protected under this agreement are legally required to pay as damages for covered professional liability claims. To be covered, claims must be based on events that arise out of the profession named in the Coverage Summary.
* * *
SEXUAL CONTACT OR ACTIVITY EXCLUSION ENDORSEMENT
* * *
1. The following exclusion is added. This change excludes coverage.
Sexual contact or activity. We won't cover professional liability injury that results from any kind of sexual contact or activity by the individual protected person.
Nor will we protect the professional corporation or association of the protected person for any claim that results from such professional liability injury if the protected person is a solo practitioner.
We'll apply this exclusion whether or not:
 the sexual contact or activity was accidental, intentional or negligent;
 the protected person believed that a client, patient or other person consented to the sexual contact or activity;
 the protected person neglected the therapeutic needs of a client, patient or other person because of the sexual contact or activity; or
 any mishandling of transference or any other psychotherapeutic dynamic resulted in the sexual contact or activity.
St. Paul moved for summary judgment in 1999, and appellant opposed its motion. The hearing on the motion occurred on June 28, 2004. After argument, the trial court found that the exclusion applied and granted summary judgment in favor of St. Paul.

Discussion
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action except those disallowed by law; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). However, an appellate court reviews the district court's grant of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn therefrom in the light most favorable to the non-movant; in ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence nor to determine the truth of the matter, but to determine whether there is a genuine issue of material fact, i.e., an issue on which reasonable persons could disagree. Peretin v. Caddo Parish School Bd., 39,170 (La.App.2d Cir.12/15/04), 889 So.2d 1190; Birdsong v. Hirsch Memorial Coliseum, 39,101 (La.App.2d Cir.12/15/04), 889 So.2d 1232.
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Edwards v. Daugherty, 2003-2103, 2003-2104 (La.10/1/04), 883 So.2d 932; Doe v. Breedlove, XXXX-XXXX (La.App. 1st Cir.2/11/05), ___ So.2d ___, 2005 WL 327797; Arnette v. NPC Services, Inc., XXXX-XXXX (La. App. 1st Cir.2/15/02), 808 So.2d 798. If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Edwards v. Daugherty, supra; Arnette v. NPC Services, Inc., supra. The determination of whether a contract is clear or ambiguous is a question of law. Id. If *236 there is any doubt or ambiguity as to the meaning of a provision in an insurance policy, it must be construed in favor of the insured and against the insurer. La. C.C. art.2056; Arnette v. NPC Services, Inc., supra. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. Edwards v. Daugherty, supra. Interpretation of an insurance contract is usually a legal question which can be properly resolved in the framework of a motion for summary judgment. Doe v. Breedlove, supra.
There is no assertion by either party in this case of a material fact dispute. St. Paul accepts Ronald's assertions that during therapy, Dr. Rausch discouraged any desire by Ronald for reconciliation with Virginia because of Dr. Rausch's personal motive for a romantic relationship with Virginia. St. Paul does not contest that such unprofessional therapy is actionable and could have a damaging effect on Ronald. Ronald argues that his assertions for improper counseling and treatment involve no claim of improper sexual relations between himself, as client, and Dr. Rausch, as the clinical psychologist. Nevertheless, St. Paul argues that the sexual activity exclusion of the policy is broad enough to exclude its professional liability coverage for Dr. Rausch's mistreatment and malpractice concerning his client, Ronald. We disagree.
St. Paul's professional liability protection obligates it to "pay amounts you and others protected under this agreement are legally required to pay as damages for covered professional liability claims." The claims must be based on events that "arise out of" Dr. Rausch's profession as a clinical psychologist, as he acted in such profession. Although the clinical psychologist's standard of care or duty which Dr. Rausch has allegedly breached has not been clearly defined or questioned at this stage of the proceedings, other cases in similar settings have stated that the nature of the therapist/patient relationship gives rise to a clear duty on the therapist's part to engage only in activity or conduct which is calculated to improve the patient's mental or emotional well-being, and to refrain from any activity or conduct which carries with it a foreseeable and unreasonable risk of mental or emotional harm to the patient. Horak v. Biris, 130 Ill.App.3d 140, 85 Ill.Dec. 599, 474 N.E.2d 13 (1985); Figueiredo-Torres v. Nickel, 321 Md. 642, 584 A.2d 69 (1991). We accept generally this statement of the therapist's duty and believe that the alleged counseling therapy motivated by Dr. Rausch's personal desires regarding Virginia fell below any acceptable standard of care for a professional relationship built on the client's trust. Therefore, this misconduct in Dr. Rausch's therapy sessions with Ronald gave rise to a professional malpractice claim which admittedly would be covered by St. Paul's insuring agreement but for the "Sexual Contact or Activity Exclusion Endorsement" which St. Paul now asserts.
The sexual contact or activity provision excludes coverage for "professional liability injury that results from any kind of sexual contact or activity by the individual protected person (Dr. Rausch)." The mental health "injury" to Ronald, however, allegedly resulted from Dr. Rausch's bad advice or counseling that Ronald's relationship with Virginia was something which was contrary to Ronald's emotional well-being. These deficient and ill-motivated counseling sessions occurred before Dr. Rausch had sexual contact or activity with Virginia. Thus, assuming that the above quoted language unambiguously contemplates that the client's "injury" may relate to the therapist's sexual contact with a third party who is not the client (an assumption which we do not accept), the *237 exclusion still does not apply. Dr. Rausch provided all of the inappropriate and damaging therapy before sexual activity with Virginia occurred.
In our view, the provision ambiguously leaves open the suggestion that the client's injury excluded from coverage can result by the therapist's sexual contact with a party outside the professional therapist/client relationship. However, contextually, the better interpretation is that the "injury" must be inflicted upon the client to give rise to a professional liability claim, and that the injury results from sexual contact between the therapist and client, which is a breach of the therapist's clear professional duties. In reaching this conclusion, we reject St. Paul's view that references in the policy exclusion to "a client, patient, or other person" affected by the sexual contact of the therapist defines a broad scope for the exclusion. The language is used in the context of the "therapeutic needs" of the "other person," who arguably may not have been a formal client or patient but to whom therapy was directly extended, creating a basis in that "other person" for a professional liability claim. Here, while Virginia may appear as an "other person" outside the disputed therapist/client relationship, her therapeutic needs were not the subject of Dr. Rausch's professional counseling; and she has made no professional liability claim. On the other hand, Ronald was a client who claims damages caused by inappropriate therapeutic advice. The sexual activity with Virginia will only be used as proof of Dr. Rausch's motive and not the direct cause of Ronald's injury.
Indeed, in all but one of the disputed coverage cases cited by St. Paul, the therapist's act of professional malpractice resulted from the therapist's sexual contact with the client. In the one case involving a coverage claim by a husband and a wife in joint therapy, the disputed insurance provision limited the amount of coverage for any claim based on the therapist's sexual misconduct "with any client or with any relative of said client." American Home Assurance Co. v. Stone, 864 F.Supp. 767 (N.D.Ill.1994). St. Paul's failure to use similarly clear exclusionary language in this case means that the policy must be construed against it for any ambiguity, and coverage applies.
Accordingly, we reverse the trial court's interpretation of the coverage exclusion and its grant of summary judgment. Costs of appeal are assessed to appellee.
REVERSED AND REMANDED.