924 So.2d 480 (2006)
FLEET FUEL, INC. d/b/a Fuelman, Plaintiff-Appellant
v.
MYNEX, INC. and W. James Singleton, Defendant-Appellee.
No. 40,683-CA.
Court of Appeal of Louisiana, Second Circuit.
March 8, 2006.
*481 David A. Szwak, Shreveport, for Appellant.
S.P. Davis, for Appellee.
Before WILLIAMS, PEATROSS and DREW, JJ.
WILLIAMS, J.
Plaintiff, Fleet Fuel, Inc. d/b/a Fuelman ("Fuelman"), appeals a city court's judgment denying its motion for summary judgment and granting summary judgment in favor of defendant, W. James Singleton ("Singleton"), declaring that the evidence was insufficient to establish that Singleton personally bound himself as a surety by signing the contract at issue. For the reasons assigned below, we affirm the city court's ruling.

FACTS
Mynex, Inc. ("Mynex") applied for "access cards" from Fuelman which allowed Mynex to purchase gasoline on open account. The application was approved, and after making purchases and payments over a period of time, Mynex eventually failed to pay a balance due of $7,336.53. Mynex subsequently filed for bankruptcy protection, and Fuelman sought payment from Singleton, the chairman of Mynex's board of directors who had signed the credit application. Singleton filed exceptions of no right of action and no cause of action wherein he denied signing the application and authorizing the account with Fuelman. The trial court sustained the exceptions, and this court reversed that ruling and remanded this matter for further proceedings. Fleet Fuel, Inc. d/b/a Fuelman v. Mynex, Inc., 38,696 (La.App.2d Cir.6/23/04), 877 So.2d 234. Subsequently, both parties filed motions for summary judgment. Singleton contended the language contained in the credit application lacked the specificity to show that he is personally bound for the debt owed. The trial court denied Fuelman's motion for summary judgment and granted summary judgment in favor of Singleton, stating:

* * *
The contract in this case lacks the express language necessary to bind defendant, W.J. Singleton, as surety for the debts incurred by Mynex, Inc. As further evidenced by documentation presented into evidence, Mr. Singleton indicated on at least one of the contract documents that he was signing in his representative capacity. This Court finds that the evidence in this matter is insufficient to establish that W.J. Singleton personally bound himself as a surety by signing the contract in this matter. Where as, there is no genuine issue of material fact to show that defendant, W.J. Singleton, personally bound himself as surety in the contract at issue.

* * *
This appeal followed.

DISCUSSION
Fuelman contends the trial court erred in finding that Singleton did not sign the application in his personal capacity, but rather had signed in a representative capacity. According to Fuelman, Singleton's motion for summary judgment should have *482 been denied, and its motion should have been granted.
LSA-C.C.P. art. 966 provides, in pertinent part:
A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
* * *
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

* * *
In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence nor to determine the truth of the matter, but to determine whether there is a genuine issue of material fact, i.e., an issue on which reasonable persons could disagree. Barringer v. Rausch, 39,553 (La.App.2d Cir.4/6/05), 900 So.2d 232; Peretin v. Caddo Parish School Bd., 39,170 (La.App.2d Cir.12/15/04), 889 So.2d 1190. An appellate court reviews the district court's grant of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn therefrom in the light most favorable to the non-movant. Id.
A contract of guaranty is equivalent to a contract of suretyship and the two terms may be used interchangeably. Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc., 32,441 (La.App.2d Cir.12/8/99), 748 So.2d 594; Commercial National Bank v. Rowe, 27,800 (La.App.2d Cir. 1/24/96), 666 So.2d 1312. Therefore, the provisions of the civil code governing the contract of suretyship may be examined in testing whether there is a contract of guaranty. Custom-Bilt Cabinet & Supply, supra.
Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so. LSA-C.C. art. 3035. A surety is liable to the creditor in accordance with the provisions of the Civil Code, for the full performance of the obligation of the principal obligor, without benefit of division or discussion, even in the absence of an express agreement of solidarity. LSA-C.C. art. 3045. The surety's contract need not observe technical formalities, but must contain an absolute expression of intent to be bound. First National Bank of Lewisville v. *483 Jones, 35,708 (La.App.2d Cir.2/27/02), 811 So.2d 217; Custom-Bilt Cabinet & Supply, supra.
Contracts of guaranty are subject to the same rules of interpretation as contracts in general. Custom-Bilt Cabinet & Supply, supra. Although parol evidence is inadmissible to vary the terms of a written contract, if the terms of a written contract are susceptible of more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and show the intent of the parties. Bossier Orthopaedic Clinic v. Durham, 32,543 (La. App.2d Cir.12/15/99), 747 So.2d 731 citing, Pelican Plumbing Supply, Inc. v. J.O.H. Construction Co., Inc., 94-991 (La.App. 5 Cir. 3/28/95), 653 So.2d 699. In interpreting provisions of an agreement about which there exists some doubt, a court must seek the true intention of the parties, even if to do so necessitates departure from the literal meaning of the terms. Id.
In ascertaining the intention of the parties to a contract, where it cannot be adequately discerned from the contract or agreement as a whole, the facts and circumstances surrounding the parties at the time of contracting are a relevant subject of inquiry. Id. Determining the intent of the parties becomes, in part, a question of fact. Id.; United Investors Life Ins. Co. v. Alexander, 27,466 (La.App.2d Cir.11/1/95), 662 So.2d 831.
In the instant case, the credit application listed the applicant's name as "Mynex, Inc." and included Mynex's address, telephone number and federal identification number. A section entitled "GUARANTORS OF PAYMENT" was completed with Mynex's name, address and telephone number. Singleton's purported signature appears beneath a caption entitled "GUARANTORS SIGNATURE."[1] The captioning and signature line are preceded by the following language: "I/we further agree to all the terms and conditions listed on the reverse side of the form." The reverse side of the form provides, in pertinent part, as follows:
The customer and each guarantor, unconditionally, jointly and severally, and solidarily guarantee full and prompt payment of all sums which may from time-to-time be owing to FUELMAN by customer as a result of this agreement. . . .
* * *
In consideration of charges allowed and to be allowed to the customer named herein, the guarantor hereby personally guarantees payment of all amounts due guarantee as to the indebtedness incurred subsequent to such delivery.
Singleton, relying upon the ruling in Pelican Plumbing Supply, Inc., supra, argues that the aforementioned language lacks the specificity to bind him as a surety. In Pelican Plumbing Supply, the plumbing supply company filed suit on open account against the construction company and the construction company's vice president, Harold Heidingsfelder. The credit agreement, which had been signed by Heidingsfelder, contained the following language:

*484 In consideration of an open account privilege, I hereby understand and agree to the above terms. Should it become necessary to place this account for collection I shall personally obligate myself and my corporation, if any, to pay the entire amount due. . . .
During the trial, Heidingsfelder testified that he did not intend to sign the credit application in his personal capacity. He stated that he had signed it as a credit application, and he would not have signed it had it been pointed out to him that the application could be interpreted to include a personal guaranty. The fifth circuit upheld the trial court's determination that Heidingsfelder did not intend to sign the credit application in his personal capacity.
Similarly, in Eclipse Telecommunications, Inc. v. Telnet International Corp., 01-271 (La.App. 5th Cir.10/17/01), 800 So.2d 1009, Eclipse Telecommunications ("Eclipse") filed a suit on open account for the collection of a debt pursuant to a contract for long distance telephone service. Named as defendants were Telnet International Corporation ("Telnet") and its president, Chris Anderson, among others. Anderson contended he had not personally guaranteed Telnet's debt to Eclipse. The agreement at issue listed Telnet as the applicant and was signed by Anderson, with no designation of his position as president of the corporation. In conjunction with the contract, Anderson executed a "Guarantor Agreement" which stated:
The individual named below called "Guarantor" agrees and guarantees that applicant will perform the obligations as set forth on the "Application for Service" and in breach thereof, guarantor promises and agrees that he will personally and individually be responsible for and will faithfully perform all of applicant's obligation.
Below that statement in the contract was a section which required the name, address, telephone number, and social security number of the guarantor. The section was completed with Telnet's information, and the document was signed by "Chris Anderson, president." There was no personal information on the document pertaining to Anderson. The court held that Anderson met his burden of proving that Eclipse could not maintain a valid cause of action in surety against him personally for the debt.
In the instant case, as noted above, it is undisputed that the credit application was completed on behalf of Mynex. The application included Mynex's address, telephone number, federal identification number and banking information. Additionally, Mynex's name, address and telephone number were detailed in the section entitled "GUARANTORS OF PAYMENT." Singleton's signature appeared beneath the caption entitled "GUARANTORS SIGNATURE." His signature and his title as Mynex's chairman were present in the section of the application entitled "CORPORATE VERIFICATION."
After conducting a de novo review of the record, we find that the evidence is insufficient to prove that the credit application contained an absolute expression of Singleton's intent to be bound as required under the law of suretyship. After reviewing the documentary evidence submitted, we find that there is nothing in the contract to indicate that Singleton signed the credit application in his personal capacity. All of the information submitted in the credit application pertains to Mynex. Because of the strict nature of the contract of surety, particularly, the requirement that the contract "must contain an absolute expression of intent to be bound," See LSA-C.C. art. 3038; First National Bank of Lewisville, supra; Custom-Bilt Cabinet & Supply, *485 supra, we find that the city court was correct in granting summary judgment in favor of Singleton and in denying Fuelman's motion.

CONCLUSION
For the reasons stated above, city court's grant of summary judgment in favor of Singleton is hereby affirmed.
AFFIRMED.
PEATROSS, J., dissents with written reasons.
PEATROSS, J., dissents.
I respectfully dissent. The majority concluded that the language contained in the contract at issue does not as a matter of law constitute "an absolute expression of [Singleton's] intent to be bound" as guarantor, and, therefore, affirms the grant of Singleton's motion for summary judgment. I respectfully disagree. As the majority recognizes, in circumstances such as these, ascertaining the intent of the parties is the relevant inquiry, which includes an evaluation of the facts and circumstances surrounding the parties' intentions at the time of contracting. The majority also notes that determining the intent of the parties then becomes a question of fact. Singleton's intent to be personally bound or not is a material issue of fact in this case and is in dispute. For this reason, I believe this matter inappropriate for summary judgment.
In addition, I note that the jurisprudence relied upon by Singleton and the majority, specifically the decision in Pelican Plumbing Supply, was not decided on summary judgment, but was decided by the trial court as trier of fact after trial and the presentation of evidence. In my opinion, that decision does not, therefore, support an affirmance of the trial court's grant of summary judgment on this issue in the case sub judice.
For these reasons, I would reverse the grant of Singleton's motion for summary judgment and remand the matter for further proceedings in the trial court.
NOTES
[1] We must point out that in the prior proceedings with regard to the exception of no cause of action/no right of action, Singleton denied signing any portion of the credit application at issue and denied authorizing the agreement with Fuelman. However, a handwriting expert concluded that the signatures on the application matched Singleton's signature on other documents.