PEATROSS, J.
 

 | tIn this suit to collect an outstanding balance on an account owned by Pelican State Wholesale, Inc. (“Pelican”), the trial court granted summary judgment in favor of Pelican, finding that the now deceased James D. Mays, Jr., signed a “new account” form which contained a clause reflecting a surety agreement to personally obligate himself for the debt. Defendants, Mr. Mays’ widow, Patricia McCain Mays, and children (collectively referred to herein as “Mrs. Mays”), appeal. Finding that genuine issues of material fact exist regarding the interpretation of the “new account form,” we reverse the summary judgment and remand for further proceedings.
 

 FACTS
 

 Mr. and Mrs. Mays were the sole shareholders of Louisville U-Pak-It, Inc., which ran a convenience store in Monroe. In 1999, the Mays contracted with Pelican to supply tobacco and other products for the convenience store. A “new account” form was completed and signed by Mr. Mays. The form appears to be a standard Pelican form to be completed by potential customers seeking to purchase Pelican’s products on credit. On the form, Mr. Mays supplied the business information requested, as well as the information for him and his
 
 *342
 
 wife as owners of Louisville U-Pak-It. He then signed and dated the form, with no corporate designation of title.
 

 Mr. Mays died in 2004 and Louisville U-Pak-It ceased operations shortly thereafter. An outstanding balance of approximately $8,000 remained with Pelican. Pelican filed suit against Mrs. Mays and the Mays’ children to collect the unpaid balance. Thereafter, Pelican filed a motion for summary judgment relying on the following language in the “new account” Lform:
 

 WE CERTIFY THAT ALL THE INFORMATION ON THIS FORM IS CORRECT. WE ACKNOWLEDGE AND AGREE THAT A RATE OF 18% PER ANNUM BUT IN ANY EVENT NOT TO EXCEED THE MAXIMUM LEGAL RATE WILL BE CHARGED ON ALL UNPAID BALANCES SEVEN (7) DAYS AFTER THE DELIVERY DATE. IN THE EVENT OF DEFAULT AND REFERRAL TO AN ATTORNEY OR COLLECTION AGENCY, WE AGREE TO ALL COSTS OF COLLECTION INCLUDING ATTORNEY’S FEES. IN THE EVENT OF CHANGE OF OWNERSHIP THIS AGREEMENT WILL REMAIN IN EFFECT AS WILL THE RESPONSIBILITY OF DEBT INCURRED AND COLLECTION PROCEDURES TO THOSE PARTIES LISTED ABOVE. WE AUTHORIZE YOU TO CONTACT THESE REFERENCES AND FOR THEM TO RELEASE ANY FINANCIAL INFORMATION YOU REQUIRE IN CONSIDERATION OF THE MATTERS CONTAINED HEREIN.
 
 BE IT UNDERSTOOD THE BELOW SIGNED PERSONALLY GUARANTEES ALL PURCHASED AMOUNTS BY THE BUSINESS NAMED ABOVE.
 
 ALL FIRST ORDERS SHIPPED ARE TO BE CASH.
 

 (Emphasis added.)
 

 Following this language on the form are date, signatux-e and title lines. Mr. Mays dated and signed the form, but did not fill in a title.
 

 As stated, the trial judge granted summary judgment in favor of Pelican, finding that Mr. Mays’ signature constituted a suretyship agreement to be personally obligated on the debt. This appeal ensued.
 

 DISCUSSION
 

 The appellate court’s review of a grant or denial of a summary judgment is
 
 de novo. Independent Fire Ins. Co. v. Sunbeam Corp.,
 
 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226;
 
 Schroeder v. Board of Supervisors of Louisiana State University,
 
 591 So.2d 342 (La.1991);
 
 Hinson v. Glen Oak Retirement Home,
 
 34,281 (La.App.2d Cir.12/15/00), 774 So.2d 31134. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. See La. C.C.P. art. 966(A)(2);
 
 Hinson v. Glen Oak Retirement Home, supra; Lee v. Wall,
 
 31,468, 31,469 (La.App.2d Cir.1/20/99), 726 So.2d 1044;
 
 Gardner v. Louisiana State University Medical Center in Shreveport,
 
 29,946 (La.App.2d Cir.10/29/97), 702 So.2d 53. A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966(B).
 

 The majority opinion of this court in
 
 Fleet Fuel, Inc. v. Mynex, Inc.,
 
 40,683 (La.App.2d Cir.3/8/06) 924 So.2d 480,
 
 writ denied,
 
 06-0762 (La.6/23/06), 930 So.2d 977, set forth the law regarding contractual suretyship:
 

 
 *343
 
 A contract of guaranty is equivalent to a contract of suretyship and the two terms may be used interchangeably. Therefore, the provisions of the civil code governing the contract of surety-ship may be examined in testing whether there is a contract of guaranty.
 

 Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so. LSA-C.C. art. 3035. A surety is liable to the creditor in accordance with the provisions of the Civil Code, for the full performance of the obligation of the principal obligor, without benefit of division or discussion, even in the absence of an express agreement of solidarity. LSA-C.C. art. 3045. The surety’s contract need not observe technical formalities, but must contain an absolute expression of intent to be bound.
 

 Contracts of guaranty are subject to the same rules of interpretation as contracts in general. Although parol evidence is inadmissible to vary the terms of a written contract, if the terms of a written contract are susceptible of more than one interpretation, or there is uncertainty or ambiguity as to its | .[provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and show the intent of the parties. In interpreting provisions of an agreement about which there exists some doubt, a court must seek the true intention of the parties, even if to do so necessitates departure from the literal meaning of the terms.
 

 In ascertaining the intention of the parties to a contract, where it cannot be adequately discerned from the contract or agreement as a whole,
 
 the facts and circumstances surrounding the parties at the time of contracting are a relevant subject of inquiry. Determining the intent of the parties becomes, in part, a question of fact.
 

 (Emphasis added; internal citations omitted.)
 

 Both parties in the case
 
 subjudi-ce
 
 cite and analogize the instant case to
 
 Fleet Fuel v. Mynex, supra.
 
 In
 
 Fleet Fuel,
 
 this court affirmed summary judgment in favor of a corporate signor, holding that,
 
 as a matter of law,
 
 the signature in that case did not constitute “an absolute expression of [the corporate signor’s] intent to be bound” as guarantor. As stated by the majority in
 
 Fleet Fuel
 
 and as emphasized in the dissenting opinion in
 
 Fleet Fuel,
 
 however, the question of the intent is a question of fact. We conclude that material issues of fact exist in situations where liability turns on such intent and the same cannot be ascertained from the language of the contract and there exist outside circumstances that may assist in discerning such intent.
 

 The existence of factual issues involving the question of the intent to be bound by a corporate signor as surety were recognized by the trial court in the case of
 
 Pelican Plumbing Supply, Inc. v. J.O.H. Construction Co., Inc.,
 
 94-991 (La.App. 5th Cir.3/28/95), 653 So.2d 699. In
 
 Pelican Plumbing Supply v. J.O.H.,
 
 the trial court granted summary judgment inj-favor of the corporate defendant in a suit on open account, but refused summary judgment against the vice president signor individually, sending the issue of his intent to be bound as guarantor to a trial on the merits. Ultimately, the trier of fact found that the vice president in
 
 Pelican Plumbing Supply
 
 had
 
 not
 
 signed the document in his personal capacity and was, therefore, not liable as guarantor. The fifth circuit affirmed. Significant to the matter before this court is that the trial court in
 
 Pelican Plumbing Supply
 
 recognized the factual issues surrounding a corporate representative signing on an account for the corpora
 
 *344
 
 tion where the intent to be bound individually as guarantor is not clearly discernable from the document itself.
 

 Here, as previously stated, the “new account form” employed by Pelican and Mr. Mays was a corporate form of Pelican’s for use by businesses seeking credit with Pelican for the purchase of its products. The information provided by Mr. Mays on the form was primarily corporate information. It is not clear from the document language and/or signature itself that Mr. Mays held an “absolute intent to be bound as personal guarantor.” See
 
 Fleet Fuel, supra.
 
 Thus, we conclude that genuine issues of material fact exist that preclude summary judgment in this case.
 
 [1]
 

 CONCLUSION
 

 For the foregoing reasons, the summary judgment of the trial court in favor of Pelican State Wholesale, Inc. is reversed and the matter is | ¿remanded to the trial court for further proceedings. Costs of appeal are assessed to Plaintiff/Appellee Pelican State Wholesale, Inc.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . We are cognizant of the potential applicability of La. R.S. 13:3721, or the "Dead Man's Statute,” at a trial on the merits of this matter. It will be within the province of the trial court to determine if the requirements of this statute are met and, if so, the effect the provision would have on the admission of evidence of intent.